880 P.2d 1124

**The STATE of Arizona, Appellee,**

v.

**Miguel Angel LARA, Appellant.**

**No. 2 CA–CR 92–0901.**

Court of Appeals of Arizona,
Division 2, Department B.

March 31, 1994.

Review Granted Oct. 4, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Randall M. Howe, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Tucson, for appellant.

## OPINION

DRUKE, Chief Judge.

Appellant Miguel Angel Lara appeals from his conviction for aggravated assault, which the jury determined to be of a dangerous nature. Viewing the evidence in the light most favorable to sustaining the verdict, *State v. Atwood*, 171 Ariz. 576, 832 P.2d 593 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993), we reverse.

## FACTS AND PROCEDURAL BACKGROUND

On April 9, 1990, appellant was staying with a man named Fernando Bartlett. Around noon, the police received a call from Bartlett complaining of an unwanted person at his house. Tucson police officer Kucsmas responded to the call and was told by Bartlett that he had asked appellant to leave several times without success.

Kucsmas entered the house and walked down a hall to the living room where loud music was playing. As he entered the room, Kucsmas saw appellant sitting on the couch with his feet propped up and a cowboy hat over his face. After Kucsmas asked him to stand up, appellant pushed his hat back on his head and abruptly stood up holding a knife. Appellant moved toward Kucsmas, making horizontal slashing motions with the knife. As Kucsmas began to back up, he took his radio from his belt and called for assistance. As appellant continued to approach, Kucsmas backed out of the residence and eventually drew his gun. Kucsmas yelled several times, "stop or I'll shoot" and "alto," which is Spanish for "stop." Appellant did not respond. After driving Kucsmas back to a fence at the front of the house, appellant raised the knife above his head and lunged. Kucsmas then shot appellant in the chest, severely wounding him.

Appellant was indicted on one count of attempted first-degree murder and one count of aggravated assault. He was acquitted of attempted first-degree murder, but was found guilty of aggravated assault and was sentenced to a presumptive prison term of 7.5 years.

## COMPETENCY TO STAND TRIAL

■ Appellant first contends that he was incompetent to stand trial. Due process requires that the state "observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975). In this case, the trial court granted appellant's motion for a hearing to determine his competency pursuant to Rule 11, Ariz. R.Crim.P., 17 A.R.S. After psychological examinations were conducted, the court found that appellant was incompetent to stand trial, but that he could be restored to competency within a reasonable period of time. Thus, pursuant to Rule 11.5(b)(3), the court committed appellant to the Maricopa County Jail Mental Health Unit for a period not to exceed six months. Approximately five months later, the medical director of the unit advised the court that appellant's competency had been restored, and he was returned to Pima County.

The trial court then conducted a hearing to redetermine appellant's competency as required by Rule 11.6(a). Appellant called Dr. Joseph Geffen, who had examined appellant both before and after his Maricopa County commitment. Dr. Geffen testified that although appellant had organic brain damage, he "seem[ed] to be factually able to understand what was going on." The doctor nevertheless believed that appellant "might not be competent from a rational understanding basis," explaining that "a mental disorder which does not [a]ffect someone's verbal intelligence could [a]ffect his behavior, his personality and other aspects of his behavior in court so that he might not be competent in terms of the standard that says that he is supposed to be capable to fully cooperat[e] with his attorney."

On cross-examination by the state, Dr. Geffen admitted that someone refusing to accept responsibility for his actions could behave as appellant was behaving. When asked whether appellant's organic brain damage was the only possible cause of his behavior, Dr. Geffen agreed that there were "other possible explanations including one that the defendant might really believe ... that he is innocent [a]nd he does not want to agree to anything other than a trial to determine his innocence."

■ No one else testified at the hearing. Following counsels' arguments, the trial court found appellant competent to stand trial. A determination of competency to stand trial is always and exclusively a question for the trial court. *Bishop v. Superior Court (Bishop II)*, 150 Ariz. 404, 724 P.2d 23 (1986). On review, we determine only

whether its findings are supported by reasonable evidence. *State v. Sims,* 118 Ariz. 210, 575 P.2d 1236 (1978). *See also State v. Ferguson,* 26 Ariz.App. 285, 547 P.2d 1085 (1976). Moreover, although the trial court may call upon mental health experts to assist in its determination, their opinions are not binding; the determination of both fact and law is the court's alone. *Bishop II.*

■ Appellant argues that his due process rights under the United States and Arizona Constitutions were violated because there was no evidence to support the finding of competency or to rebut the presumption of continuing incompetency following the initial Rule 11 hearing. *See State v. Hehman,* 110 Ariz. 459, 520 P.2d 507 (1974) (prior adjudication of incompetency raises presumption of continued incompetency). Specifically, appellant argues that the only evidence before the court at the second competency hearing was Dr. Geffen's uncontroverted testimony that appellant was incompetent due to his inability to assist his lawyer with a reasonable degree of rational understanding. Considering "the facts in a light most favorable to sustaining the trial court's finding," *State v. Bishop (Bishop III),* 162 Ariz. 103, 104, 781 P.2d 581, 582 (1989), we disagree.

Although Dr. Geffen did state that appellant "might not be competent from a rational understanding basis," the doctor also agreed on cross-examination that there were other explanations for appellant's behavior. Because the trial court was free to adopt these alternative explanations in determining appellant's competency without necessarily accepting Dr. Geffen's ultimate opinion in that regard, *Bishop II,* we find that there was reasonable evidence to support the court's determination. Thus, it did not err in concluding that appellant was competent to stand trial.

## "VOLUNTARY ACT" INSTRUCTION

Appellant contends that the trial court erred in refusing his requested instruction that the state had to prove that his act of attacking Officer Kucsmas was voluntary. Specifically, appellant argues that Dr. Geffen's trial testimony raised questions about whether appellant acted reflexively rather than voluntarily, thus entitling him to the requested instruction. We agree.

■ A defendant is entitled to a jury instruction on any theory reasonably supported by the evidence. *State v. Melendez,* 121 Ariz. 1, 588 P.2d 294 (1978); *State v. Miller,* 108 Ariz. 441, 501 P.2d 383 (1972). In the event the trial court fails to instruct the jury on a matter vital to the defendant's rights, such omission constitutes fundamental error. *State v. Evans,* 109 Ariz. 491, 512 P.2d 1225 (1973).

In this case, Dr. Geffen testified at trial that appellant suffered from "some kind of organic brain impairment" that affected the part of his brain which governs the higher mental functions of a human being and "plays a role in controlling some of the more primitive tendencies or behavior[s] that are almost automatic, that are instinctive." Dr. Geffen further stated that he would expect a person with such an impairment to "[f]eel threatened and respond to that threat with anger and with rage ... with almost a pre-programmed kind of massive defense response." When asked about the ability to inhibit that response, Dr. Geffen stated that "with this impairment, a person who begins a certain action impulsively, in reaction to a perceived threat, might continue that action without the ability to inhibit himself; ... that ability would be reduced very drastically." When cross-examined by the state as to whether the "reflexive kind of conduct" described by the doctor is "kind of an immediate response," he answered: "Kind of automatic, yes."

Based on this testimony, appellant's defense was that he acted reflexively in response to a perceived threat and was inhibited by his mental impairment from discontinuing his response. Appellant thus requested a "voluntary act" instruction based on A.R.S. § 13-201.

■ Section 13-201 provides in relevant part that "[t]he minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act." Section 13-105(34) defines a "voluntary" act as "a bodily movement performed

consciously and as a result of effort and determination." This definition excludes a reflex bodily movement. "The definition of voluntary act in A.R.S. § 13–105 excludes ... such bodily movements as reflexes or convulsions and movements during unconsciousness, sleep, or hypnosis." 1 Rudolph J. Gerber, *Criminal Law of Arizona* at 201–1 (2d ed. 1993). *See also* Model Penal Code § 2.01(2)(a) (1962) (reflex not voluntary act); 1 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 3.2(c) (1986). Because the evidence in this case reasonably supported appellant's defense that his actions were reflexive rather than voluntary, he was entitled to his requested instruction based on A.R.S. § 13–201.

■ The state nevertheless contends, citing *State v. Bridgeforth,* 156 Ariz. 60, 750 P.2d 3 (1988), that it was not error to refuse appellant's requested voluntariness instruction because the court's other instructions adequately covered the same subject, specifically, its instructions on premeditation and intent. We find that neither instruction adequately covered the issue of whether appellant's attack was voluntary.

The premeditation instruction related solely to the charge of attempted first-degree murder, not aggravated assault. The instruction told the jury that premeditation is one of the elements of first-degree murder and means that "a person either intends or knows that his conduct will result in death to another person."

■ The instruction on intent covered a subject different from appellant's requested instruction on voluntary act. The intent instruction was based on A.R.S. § 13–105(6), which defines the four mental states required for criminal culpability, namely, intentionally, knowingly, recklessly, and negligently.

The distinctly punitive nature of criminal law requires that sanctions be reserved for conduct which can be morally condemned. In most instances, the penal law does not condemn conduct alone but rather a state of mind which exhibits an intent to harm, an awareness of harm, an indifference to harm, or a gross deviation from reasonable care. Thus, liability is generally limited in the [Arizona Criminal] code to those who act intentionally, knowingly, recklessly, or negligently.

Gerber, *supra,* at 202–2. *See also Bridgeforth,* 156 Ariz. at 62, 750 P.2d at 5. Criminal liability does not even arise, however, unless the defendant's act is voluntary; it is a "minimum requirement for criminal liability" under A.R.S. § 13–201. "If voluntariness is raised, such an act or omission must be established if penal liability is to apply." Gerber, *supra,* at 201–2 to 201–3. Simply stated, "a crime consists of both a physical part and a mental part; that is, both an act or omission ... and a state of mind." LaFave & Scott, *supra,* § 3.4 at 296. Appellant's requested instruction covered the former and the intent instruction the latter, two different subjects.

Accordingly, we hold that the evidence in this case reasonably supported appellant's requested "voluntary act" instruction and that the refusal to give it was reversible error because its subject was not adequately covered by the instructions on intent and premeditation.

## LESSER–INCLUDED INSTRUCTION

■ We next address appellant's contention that the trial court committed reversible error in refusing to give his requested instruction on the lesser-included offense of disorderly conduct by reckless display of a deadly weapon. Appellant argues that the instruction was required by *State v. Angle,* 149 Ariz. 478, 720 P.2d 79 (1986) (adopting the dissent of Judge Kleinschmidt in 149 Ariz. 499, 720 P.2d 100 (App.1985)). We agree, given the factual similarity of *Angle* and this case.

In *Angle,* the defendant and his wife became involved in a domestic quarrel shortly after he was released from the hospital following a motorcycle accident. At one point, he threatened to leave, and she hit him with one of his boots as he was attempting to put it on. He then followed her into the living room and pointed a rifle at her. She grabbed it, a struggle ensued, and she fell backwards, hitting her head on the table. The defendant again pointed the rifle at her, but then put it down. She subsequently ran

from the house to a neighbor's and called the police.

The defendant was charged with aggravated assault by use of a deadly weapon. As in this case, however, the trial court in *Angle* refused the defendant's request for a lesser-included instruction on disorderly conduct by reckless display of a deadly weapon. On appeal, Judge Kleinschmidt first observed that "as a matter of common sense it is impossible to put a person in reasonable apprehension of imminent bodily injury [by using a deadly weapon] without also disturbing that person's peace or quiet." 149 Ariz. at 508, 720 P.2d at 109. He then concluded that the facts supported the requested disorderly conduct instruction, reasoning as follows:

> [The] jury could have found that the defendant did not *intend* to put [his wife] in apprehension of imminent physical injury but merely intended to disturb her, or, perhaps what is equally reasonable, that he had no intent to either put her in apprehension of injury or to disturb her but merely continued his course of disorderly conduct *knowing* he was disturbing her, which would be enough to support a conviction [for disorderly conduct].

*Id.* at 508–09, 720 P.2d at 109–10 (emphasis added).

We reach a similar conclusion in this case. The jury could have found, based on Dr. Geffen's testimony, that because appellant's attack was automatic and not goal-directed, he had no *intent* either to put Officer Kucsmas in apprehension of imminent bodily injury or to disturb him. The jury could have further found, however, that even though the attack was reflexive, appellant nevertheless *knew* that he was disturbing the officer because there was no evidence that appellant lacked such knowledge. Certainly, he was conscious at the time and there was no testimony from Dr. Geffen that appellant did not know Kucsmas would be disturbed by the attack, only that appellant lacked the ability to suppress it. Accordingly, we hold that appellant's requested instruction on disorder-

ly conduct by reckless display of a deadly weapon was reasonably supported by the evidence. *See State v. Celaya,* 135 Ariz. 248, 660 P.2d 849 (1983). Therefore, the trial court's refusal to give the instruction was reversible error.

Reversed and remanded.

ESPINOSA, P.J., and HATHAWAY, J., concur.