902 P.2d 1337

STATE of Arizona, Appellee,

v.

Miguel Angel LARA, Appellant.

No. CR–94–0225–PR.

Supreme Court of Arizona,
En Banc.

Sept. 19, 1995.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Randall M. Howe, Assistant Attorney General, Phoenix, for State of Arizona.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Deputy Public Defender, Tucson, for Miguel Angel Lara.

OPINION

MARTONE, Justice.

Miguel Lara was convicted of aggravated assault. The court of appeals reversed, concluding that Lara was entitled to a "voluntary act" instruction and a lesser included offense instruction on disorderly conduct. *State v. Lara*, 179 Ariz. 578, 880 P.2d 1124 (App.1994). Disagreeing with these conclusions, and believing that the "voluntary act" instruction raised an issue of importance, we granted review.

## PART I

After having been stalked and assaulted by Lara, Al Bartlett called the Tucson police and complained that Lara would not leave his house. Tucson police officer Kucsmas answered the call and was told by Bartlett that Lara was inside. Kucsmas walked in, saw Lara lying down on a couch and asked him to stand up. Lara got up and pointed a knife at Kucsmas. Kucsmas backed off and called for help. He retreated down a corridor, drew his pistol and told Lara to stop or he would shoot. Instead, Lara continued to walk towards him, called him names and slashed at him with the knife. Lara backed Kucsmas out of the house, swung the knife at him and said he was going to kill him. Finally, with Kucsmas backed into a fence, Lara raised his knife and lunged at him. Kucsmas then shot Lara.

Lara was charged with attempted murder and aggravated assault. A defense psychologist testified that Lara was suffering from some organic brain impairment and personality disorder. In such a person, he would expect to see a reduced ability to use good judgment in social situations, increased agitation, and an increased tendency to fly off into a tantrum or rage as if by reflex. Based on this sort of testimony, Lara asked for a voluntary act instruction under A.R.S. § 13–201 and § 13–105(34).[1] The trial court rejected the instruction. Lara also asked for a lesser included offense instruction for disorderly conduct. The trial judge rejected that too. The jury found Lara guilty of aggravated assault but acquitted him of attempted first degree murder.

## PART II

A.R.S. § 13–201 provides as follows:

The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform a duty imposed by law which the person is physically capable of performing.

A.R.S. § 13–105(34)[2] defines "voluntary act" as "a bodily movement performed consciously and as a result of effort and determination." The court of appeals held that Lara was entitled to an instruction on these statutes because it believed that the expert testimony would have supported a finding that his behavior was "reflexive rather than voluntary." 179 Ariz. at 582, 880 P.2d at 1128. We disagree.

A.R.S. § 13–201 is a codification of the common law requirement of *actus reus*— that a crime requires an act. A guilty mind (*mens rea*) is not enough. And, under § 13–105(34), an act means a conscious bodily movement caused by effort and determination. This is consistent with the common law. See *Salmond on Jurisprudence* 380–84 (8th ed. 1930); Sanford H. Kadish & Monrad G. Paulsen, *Criminal Law and Its Processes* 201–08 (1969); IV Roscoe Pound, *Jurisprudence* 410 (1959). Stating the obverse, then, a bodily movement while unconscious, asleep, under hypnosis, or during an epileptic fit, is not a voluntary act. 1 Rudolph J. Gerber, *Criminal Law of Arizona* 201–1 (1993). The autonomic nervous system controls involuntary bodily functions. The heart muscle pumps without our intervention. Our lungs can ingest air without thought. Our eyes shut reflexively when the ophthalmologist tests us for glaucoma. These are the sorts of bodily movements that would not be "performed consciously and as a result of effort and determination" within the meaning of our statute.

Lara's expert testimony falls far short of this. He was not unconscious. He was relentless in his effort and determination. He was thus not entitled to a voluntary act instruction under A.R.S. § 13–201.

We acknowledge that the word "voluntary" has been used in two separate senses, and this contributes to the confusion that surrounds the issue. As we hold here, A.R.S. §§ 13–201 and 13–105(34) use the term "voluntary act" as a determined conscious bodily

---

1. Defendant's Requested Instruction No. 4 was: The State must prove that the defendant did a voluntary act forbidden by law. 'Voluntary act' means a bodily movement performed con- sciously and as a result of effort and determination.

2. Now § 13–105(37).

movement, in contrast to a knee-jerk reflex driven by the autonomic nervous system. Used this way, "voluntary act" means *actus reus*. On the other hand, "voluntary" has also been used to describe behavior that might justify inferring a particular culpable mental state. Used this way, "voluntary" gets caught up in *mens rea*. Recommended Arizona Jury Instruction Criminal Standard 17 (1989) joins these separate uses and contributes to the confusion. It provides:

> The State must prove that the defendant did a voluntary act forbidden by law. You may determine that the defendant intended to do the act if the act was done voluntarily.

The first sentence of this instruction is, as we have shown, the *actus reus* of § 13–201, which is appropriate only if there is evidence to support a finding of a bodily movement performed unconsciously and without effort and determination, within the meaning of § 13–105(34). As we have held, this is not such a case.

■ The second sentence has nothing to do with the first. It allows the jury to draw an inference of intent from an act that is voluntary. But intent is one of our culpable mental states descriptive of *mens rea*, not *actus reus*. See A.R.S. § 13–105(6)[3] and § 13–202. The second sentence is likely to be justified in any case in which intent is an issue.[4] Those who would use Standard 17 need to be alert to this problem.

## PART III

■ The trial court rejected Lara's request for a disorderly conduct instruction as a lesser included offense of aggravated assault because there was no evidence to support it. The court of appeals reversed and concluded that a jury could have found that Lara knew that he was disturbing the police-

man. 179 Ariz. at 583, 880 P.2d at 1129. We disagree.

■ In concluding that disorderly conduct can be a lesser included offense of aggravated assault, the court of appeals relied upon *State v. Angle*, 149 Ariz. 478, 720 P.2d 79 (1986). Assuming, without deciding, the continuing validity of that opinion, there nevertheless must be evidence to support the lesser offense to justify the instruction. There is none here. Lara's attack on the policeman was relentless and deadly. He slashed at him with a knife and told him he was going to kill him. Kucsmas had to shoot him to stop him. In *Angle*, there was a dispute as to whether the police were in reasonable apprehension of imminent bodily injury. The jury could have found otherwise and thus the lesser included offense instruction was justified by the evidence. In this case, it is undisputed that Kucsmas was in apprehension of imminent bodily injury. It is not possible that the jury could have found that Kucsmas was only disturbed. Moreover, even if relevant, the expert testimony could not have supported a finding of knowledge but not intent. Lara was either guilty of aggravated assault or he was not. We conclude that the evidence in this case did not justify a lesser included offense instruction.

## PART IV

We affirm the judgment of the trial court. We vacate those parts of the opinion of the court of appeals that address the voluntary act and lesser included offense instructions.

FELDMAN, C.J., MOELLER, V.C.J. and CORCORAN and ZLAKET, JJ., concur.

---

3. Now § 13–105(9).

4. While *Sandstrom v. Montana*, 442 U.S. 510, 512, 524, 99 S.Ct. 2450, 2453, 2459, 61 L.Ed.2d 39 (1979) holds that a burden shifting or conclusive presumption instruction ("the law presumes that a person intends the ordinary consequences of his voluntary acts") violates due process, the law has always allowed an instruction like the second sentence of Standard 17 here that allows,

but does not require, the jury to infer intent from voluntary conduct. *State v. Rodriguez*, 114 Ariz. 331, 333, 560 P.2d 1238, 1240 (1977) ("The law in Arizona is that a specific intent to do an act may be inferred from the circumstances of the doing of the act itself."). See *State v. Oppenheimer*, 138 Ariz. 120, 125, 673 P.2d 318, 323 (App.1983); *State v. Earby*, 136 Ariz. 246, 248, 665 P.2d 590, 592 (App.1983).