914 P.2d 1346

**STATE of Arizona, Appellee,**

v.

**Ronald Joseph WILSON, Appellant.**

**Nos. 1 CA–CR 94–0398, 1 CA–CR 94–0931.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 26, 1995.

Redesignated as Opinion and
Publication Ordered Jan. 25, 1996.

Review Denied April 23, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Consuelo Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Debus & Kazan, Ltd. by Tracey Westerhausen, Phoenix, for Appellant.

## OPINION

SULT, Judge.

Ronald Joseph Wilson ("Defendant") appeals his convictions and sentences on one count of aggravated assault and one count of criminal damage. We have concluded that the giving of a flight instruction was reversible error requiring a new trial. Since the remaining issues may arise on retrial, we address them briefly.

## FACTUAL [1], AND PROCEDURAL BACKGROUND

Defendant lived in Phoenix with his girlfriend, Karen Hennessey. Defendant and the victim, David Rau, were former friends. The friendship deteriorated when Defendant perceived that Rau was encouraging drunkenness on the part of Sean Hennessey, Karen Hennessey's teen-aged son.

Sean Hennessey spent the night of June 10, 1993, with Rau at Rau's workplace because Hennessey was too intoxicated to drive safely back to Phoenix. At approximately 7:00 a.m. on June 11, 1993, Defendant telephoned Rau and told him that he (Defendant) was going to put Sean Hennessey in the hospital by 10:00 a.m. Neither Sean Hennessey nor Rau took the threat seriously. Some four hours later, Defendant arrived at Rau's workplace armed with a baseball bat. Defendant used the bat to damage Rau's pickup truck, then threatened to use the bat on Rau and Hennessey, both of whom were seated in the pickup truck at the time. Defendant smashed in the driver's side window and demanded that Rau exit the truck. He then threatened to injure Sean Hennessey and began to walk around the truck to the passenger side where Hennessey was seated. Rau and Hennessey got out of the truck and Hennessey ran to a nearby business to call police. During the commotion, Rau also yelled to bystanders to call police. Defendant hit Rau with the bat three times. Two of the blows struck Rau squarely and one left a significant bruise on Rau's abdomen. Defendant then left the scene and drove back to

his residence in Phoenix. Upon arriving, he told Karen Hennessey that police would be arriving shortly. Police officers arrived that afternoon and arrested Defendant.

Defendant was charged by information with one count of aggravated assault, a class three dangerous felony, and one count of criminal damage, a class six felony. The case proceeded to a jury trial at which Rau, Sean Hennessey and James Klem (a friend of Rau who witnessed the crime) testified for the state. Defendant testified on his own behalf, admitting that he had a confrontation with Rau on the morning in question but denying using a baseball bat or damaging Rau's truck. Defendant acknowledged that he struck Rau once, but said that he did so with his bare fist and was acting in self-defense. Defendant also introduced character evidence on his reputation for peacefulness and Rau's reputation for untruthfulness and cross-examined the state's witnesses at length in order to emphasize inconsistencies among their respective versions of events and expose numerous prior inconsistent statements.

The jury nevertheless convicted Defendant as charged and the trial court sentenced him to mitigated prison terms of five years on the aggravated assault and .75 years on the criminal damage, to be served concurrently. Defendant filed a timely appeal. This court has jurisdiction pursuant to Ariz. Const. art. VI, § 9 and A.R.S. §§ 12–120.21(A)(1), 13–4031, 13–4033(A)(1).

## ISSUES PRESENTED

1.  Whether the evidence supported the trial court's decision to give the jury a flight instruction;

2.  The prosecutor's impeachment of Defendant during cross-examination;

3.  The law enforcement officer's statement that Defendant did not want him to search under the front seat of Defendant's truck;

4.  The trial court's exclusion of a defense witness from the courtroom notwith-

---

1.  The facts are viewed in a light most favorable to sustaining the judgment with all reasonable inferences resolved against the defendant. *State*

*v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

standing her *ad hoc* role as defendant's investigator; and

5. Whether the evidence was sufficient to support the trial court's restitution award.

## DISCUSSION

1. *The trial court erred in instructing the jury on flight.*

█ The evidence argued in support of the flight instruction consists of David Rau yelling for someone to call police while Defendant was attacking him and, after the attack, Defendant telling a witness "if you know how this man (Rau) is, you will not touch that phone." Defendant then got in his truck and drove home. The court gave the following instruction over Defendant's objection:

Running away after a crime has been committed does not in itself prove guilt. You may consider any evidence of the defendant's running away together with all the other evidence.

Defendant argues that the evidence was insufficient to support the instruction and that the giving of the instruction was reversible error. We agree.

█ Use of the flight instruction is proper where the circumstances of leaving the crime scene reveal a defendant's consciousness of guilt. *State v. Salazar,* 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992), *cert. denied,* 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). It is not necessary to show that law enforcement officers were pursuing the defendant at the time in order to satisfy the "consciousness of guilt" requirement. *Id.* at 409, 844 P.2d at 576; *State v. Lujan,* 124 Ariz. 365, 371, 604 P.2d 629, 635 (1979). Our supreme court has made it clear, however, that merely leaving the crime scene is not tantamount to flight. *State v. Celaya,* 135 Ariz. 248, 256, 660 P.2d 849, 857 (1983). The inquiry focuses on "whether [the defendant] voluntarily withdrew himself in order to avoid arrest or detention." *State v. Salazar,* 112 Ariz. 355, 357, 541 P.2d 1157, 1158 (1975).

█ We find the case of *State v. Smith,* 113 Ariz. 298, 552 P.2d 1192 (1976) instruc-

tive on this issue. In that case, the defendant and an accomplice robbed an assistant apartment manager in her office. The defendant struck her repeatedly, bound her, and threatened her life if she told the police of the incident. Defendant and his partner were then observed to walk from the office to a parking lot where they left by car. In finding the flight instruction given on this evidence to be reversible error, the supreme court explained that a two-fold test must be applied to determine whether a flight instruction should be given:

First, the evidence is viewed to ascertain whether it supports a reasonable inference that the flight or attempted flight was open, such as the result of an immediate pursuit. If this is not the case then the evidence must support the inference that the accused utilized the element of concealment or attempted concealment. The absence of any evidence supporting either of these findings would mean that the giving of an instruction on flight would be prejudicial error. . . . The evidence in the present case only shows that the appellant left the scene of the crime. This evidence does not warrant an instruction on flight. Since a timely objection was made it was prejudicial error to give the instruction.

*Id.* at 300, 552 P.2d at 1194 (citations omitted).

We conclude that *Smith* mandates reversal in this case since the evidence does not meet either aspect of the test enunciated therein. When defendant left the scene of the incident, there was no evidence he did so in haste or that there was any pursuit. Further, there was no evidence that he concealed or attempted to conceal himself. To the contrary, he went home and awaited the expected arrival of the police. On this evidence, the giving of the instruction was reversible error.

2. *The prosecutor's impeachment of defendant.*

█ In his opening statement, defense counsel told the jury that Defendant hit David Rau once, with his hand. Defendant was the only witness who testified to that effect. In cross-examining Defendant, the

prosecutor asked, "did you hear your counsel testify exactly as you have said on the stand, that you were going to testify that when you arrived [Rau] got out of the truck and you punched him in the stomach?"[2] Defense counsel objected on the basis of relevance, adding that the question "inaccurately states things. I've never been a witness in this case. I've never testified." The court sustained defense counsel's objection.

Defendant did not seek a mistrial or premise his later motion for a new trial on this issue. The state now contends that this constitutes a waiver of this issue on appeal. Prior to its repeal, A.R.S. section 13–4035(A) (1989) clearly did not require the inclusion in a motion for new trial of an error to which a proper objection had been made at trial in order to preserve the issue on appeal. We are aware of no other rule that would impose such a requirement in a criminal appeal.[3] Were we not reversing on other grounds, we would be compelled to analyze this issue for reversible error. As it is, we agree that the trial court properly sustained the objection and assume the question will not be repeated at retrial.

3. *The law enforcement officer's comment that defendant did not want his truck searched.*

█ Mark Johnson was the deputy sheriff who investigated the crime and arrested Defendant. Deputy Johnson testified on direct examination that at the time of the arrest he looked inside the cab and bed of Defendant's pickup truck for the baseball bat and did not see it. During cross-examination defense counsel asked Johnson if Defendant was cooperative at the time of his arrest. Johnson replied that Defendant was. The following dialogue occurred during redirect examination:

Q: [Y]ou testified to defense counsel that the defendant was cooperative, correct?

A: That's right.

Q: Was he completely cooperative?

A: No.

Q: You said that you took a cursory look for a baseball bat ... in the defendant's truck, correct?

A: That's right.

Q: Did you open up the truck and look for the baseball bat and car keys?

A: Just opened the door, didn't see it in there, shut the door.

Q: [D]id you go in and look under the seats?

A: Just what I could see standing right there.

Q: And why didn't you do that?

A: I believe he didn't really want me doing that.

Q: Did he make that clear to you?

A: I believe so. That's why I didn't go through it any further.

Defendant asserts that this colloquy was an improper comment on Defendant's exercise of his Fourth Amendment rights. The state responds that Defendant had opened the door by inquiring as to Defendant's cooperation.

█ Just as it is generally impermissible for a prosecutor to comment on a defendant's invocation of his Fifth Amendment right to silence, *State v. Still*, 119 Ariz. 549, 551, 582 P.2d 639, 641 (1978), so is it generally impermissible to use a defendant's invocation of Fourth Amendment protections against him, *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir.1978). The rule is not without exceptions, however, and in Arizona the Fifth Amendment privilege is subject to the doctrine of invited error. *State v. Crumley*, 128 Ariz. 302, 305, 625 P.2d 891,

2. The prosecutor was referring to an avowal that defense counsel made to the court while settling jury instructions, rather than to defense counsel's opening statement.

3. In regard to civil appeals, *see* A.R.S. § 12–2102(A) (1994): "Upon an appeal from a final judgment, the supreme court shall review any intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error, *whether a motion for new trial was made or not.*" (emphasis added) An "intermediate order" is one made between commencement of the action and final judgment, which is not separately appealable. *Rourk v. State*, 170 Ariz. 6, 13, 821 P.2d 273, 280 (App.1991).

894 (1981). We believe the same exception should and does apply to Fourth Amendment protections.

■ The invited error doctrine applies to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence relevant or require some response or rebuttal. *State v. Woods*, 141 Ariz. 446, 455, 687 P.2d 1201, 1210 (1984). However, the evidence or response must be "pertinent"; that is, it must be specifically responsive to the invitation.

In our case, defense counsel directly elicited from the officer the fact that defendant had been cooperative. The clear tenor of the prosecutor's redirect examination was to show Defendant was uncooperative by exercising his Fourth Amendment right to refuse consent to a search. As a matter of law, we do not believe that the valid exercise of a constitutional right, standing alone, can be defined as "uncooperative." *See Prescott*, 581 F.2d at 1350–51.

We agree that the state has the right to rebut Defendant's assertion of cooperation. *State v. Fulminante*, 161 Ariz. 237, 254, 778 P.2d 602, 619 (1988), *aff'd*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). However, the evidence presented in the last two questions and answers quoted above was not a "pertinent" reply to the assertion of cooperativeness.[4] We assume they will not be repeated on retrial.

### 4. *Karen Hennessey as investigator.*

■ Karen Hennessey worked on Defendant's behalf in preparing for trial, undertaking such tasks as photographing the crime scene and digesting transcripts from the first trial. She was not paid for her work, and had never been retained as an investigator on any other cases. The state had noticed her as a witness well in advance of trial. Prior to trial, the state invoked the rule of exclusion and objected to Defendant's proposal to have her seated at defense counsel's table during the trial. Over the Defendant's objection, the trial court excluded her from the courtroom until after she finished testifying.

At the request of a party, Rule 615 of the Arizona Rules of Evidence requires the trial court to exclude witnesses during the testimony of other witnesses, subject to an exception, among others, for "a person whose presence is shown by a party to be essential to the presentation of the party's cause." Another exception exists under Rule 9.3(d) of the Arizona Rules of Criminal Procedure, which entitles both the defendant and the prosecutor "to the presence of one investigator at counsel table." The trial court's decision to exclude or permit witnesses under these exceptions will not be disturbed absent an abuse of discretion. *State v. McFarlin*, 110 Ariz. 225, 229, 517 P.2d 87, 91 (1973).

Considering the mandatory language of Rules 615[5] and 9.3(a)[6], the trial court was justified in taking a limited view of the term "investigator" as it appears at Rule 9.3(d). *See State v. Fields*, 117 Ariz. 319, 322, 572 P.2d 453, 456 (App.1977) (physician testifying as defendant's expert properly excluded under Rule 9.3(a)—notwithstanding his designation by defendant as investigator—where physician "could provide little assistance to counsel in the role of an investigator"). The purpose of an investigator is "to call attention to factual matters of which counsel may not be aware." *State v. Hill*, 174 Ariz. 313, 321 n. 3, 848 P.2d 1375, 1383 n. 3 (1993) (citing comment to Rule 9.3(d)), *cert. denied*, 510 U.S. 898, 114 S.Ct. 268, 126 L.Ed.2d 219

---

**4.** We wish to be clear that neither the Fourth nor the Fifth Amendment can be a sword as well as a shield. If a defendant's evidence or comment is reasonably directly related to the invocation of the right, the prosecution may rebut with evidence or comment which is pertinent, even though such rebuttal would otherwise be objectional. *See, e.g., Crumley*, 128 Ariz. at 305, 625 P.2d at 894 (defense counsel spoke to jury in closing about defendant's not testifying, justifying it on defense counsel's opinion about weakness of state's case).

**5.** "At the request of a party the court *shall* order witnesses excluded so that they cannot hear the testimony of other witnesses...." (Emphasis added.)

**6.** "The court may, and at the request of either party *shall*, exclude prospective witnesses from the courtroom during opening statements and the testimony of other witnesses." (Emphasis added.)

(1993). Given that Karen Hennessey did not have any background as an investigator, did not interview any witnesses, and did not testify as to her investigation in this case, it is difficult to imagine any factual matters she could have called to defense counsel's attention that Defendant could not have pointed out himself. As such, her absence from the courtroom did not prejudice Defendant and the trial court was correct in its ruling.

### 5. *The restitution issue.*

■ Defendant requested and received a hearing on the issue of restitution. The trial court awarded restitution to David Rau in the amount of $3,136.82, including an award of $672.70 to Rau's medical insurance carrier and $1,427.40 to Rau. The latter amount was intended to compensate Rau for the deductible amount of his automobile insurance policy and his out-of-pocket medical expenses.

Defendant contends that most of the amount awarded to Rau and his medical insurance carrier was reimbursement for treatment of injuries Defendant did not cause. Defendant's argument is based on (i) the fact that Rau did not receive the disputed portion of his medical treatment until some six months after the injury, (ii) notes by the treating chiropractor suggesting that the Rau's back pain was caused by some other trauma or condition, and (iii) a letter from a physician who reviewed the documentation and concluded that Rau's condition was "compatible with chronic disc degeneration ... a common finding in middle aged individuals."

■ The trial court has discretion to set the restitution amount according to the facts of the case in order to make the victim whole. *State v. Ellis,* 172 Ariz. 549, 551, 838 P.2d 1310, 1312 (App.1992). We will uphold the restitution award if it bears a reasonable relationship to the victim's loss, *State v. Howard,* 168 Ariz. 458, 460, 815 P.2d 5, 7 (App.1991), and the state need only present

enough evidence to show that relationship, *State v. Scroggins,* 168 Ariz. 8, 9, 810 P.2d 631, 632 (App.1991).

Here, the state met that requirement. Rau authenticated his medical bills and testified that he suffered an out-of-pocket loss of at least $1,648.84 as a result of the injuries Defendant inflicted on him. The trial judge asked Rau whether all of his medical treatment and physical therapy was for the injury inflicted by Defendant, and Rau responded that it was. Defendant did not introduce any evidence that directly controverted Rau's testimony.[7] The trial court revised its initial findings and disallowed some of the non-medical claims submitted on Rau's behalf.

It was reasonable to conclude, on the basis of Rau's testimony and the documentary evidence, that all of the health care expenses Rau claimed were caused by Defendant's assault. To find otherwise would be to improperly substitute our own assessment of the evidence for that of the trial court. We cannot know whether restitution will again become a pertinent issue following retrial in this matter. If it does, and no additional evidence is offered by Defendant, the trial court may enter the same award.

### CONCLUSION

For the reasons set forth above, we reverse the judgments of conviction and sentences imposed thereon and remand this matter to the trial court for a new trial consistent with this decision.

GARBARINO, P.J., and LANKFORD, J., concur.

---

7. The prosecutor correctly noted that a physician's letter submitted by Defendant did not directly contradict the state's position that all of Rau's treatment was for injuries stemming from the assault. Rather, the letter concludes that the conditions apparent from an x-ray of Rau "are compatible with chronic disc degeneration ... a common finding in middle aged individuals."