2 P.3d 657

**STATE of Arizona, Appellee,**

v.

**Olvin CUTRIGHT, Jr., Appellant.**

**No. 1 CA–CR 98–0463.**

Court of Appeals of Arizona, Division 1, Department B.

June 17, 1999.

Review Denied April 18, 2000.

---

Janet A. Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and J. Randall Jue, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

SULT, Judge.

¶1 Olvin Cutright, Jr. ("defendant") appeals from his convictions and sentences imposed on one count of discharging a firearm at a residential structure and two counts of aggravated assault. In this opinion, we determine that the flight instruction was properly given. We also decide that the crime of disorderly conduct when committed by reck-

less display of a firearm is not a lesser-included offense of aggravated assault committed by using a deadly weapon to place another in reasonable apprehension of imminent physical injury.

## BACKGROUND

¶ 2 On September 25, 1997, defendant and L.C., who were recently separated, telephonically argued about the child custody and divorce proceedings in which they were involved. At the time, L.C. was living at the home of her parents, Mr. and Mrs G., and later that day, defendant went to that residence and spoke with the parents about his relationship with L.C. A heated argument ultimately ensued between L.C., her parents, and defendant.

¶ 3 Eventually, defendant left the house through the kitchen door with L.C. and her father pursuing him to the doorway, shouting that defendant should "come back and finish up the conversation." However, L.C. then saw defendant grab his shirt, and she slammed the door shut, yelling that she thought defendant had a gun. L.C. immediately heard two gunshots, Mr. G. heard three, and Mrs. G. heard loud noises. L.C. also testified that one shot went through the kitchen door and nicked the kitchen rug, and two shots hit the outside wall of the house, just east of the kitchen door.

¶ 4 L.C. called 911 and Buckeye police officers responded to the scene. Prior to the arrival of the officers, defendant had departed in his vehicle, a silver "low rider" style Buick with chrome wheels, and there were no witnesses to the manner in which he left the scene. One of the police officers who responded to the scene, Kevin Heaslip, decided not to stop but to continue on, searching for defendant. As Officer Heaslip headed northbound on Miller Road, he activated his emergency lights, but not his siren, to pass other traffic. While traveling on Miller road, he spotted a vehicle turning onto Southern Avenue that appeared to match the description of defendant's vehicle.

¶ 5 Officer Heaslip turned onto Southern Avenue and commenced following the vehicle, which in fact was defendant's. With the officer following, defendant drove very slowly, sometimes only two to three miles per hour, and defendant also swerved off the road twice. Defendant continued westbound for approximately two-tenths of a mile and then circled a trailer and stopped. Officer Heaslip then took defendant into custody.

¶ 6 Police later recovered defendant's pistol and holster near the area where he had swerved off Southern Avenue, and defendant admitted at trial that he had thrown the pistol away because he panicked. In addition, four expended casings from defendant's gun were recovered near the G. residence.

¶ 7 Defendant went to trial before a jury on Count I, knowingly discharging a firearm at an occupied residence, a class 2 dangerous felony, and Counts II and III, aggravated assault on Mr. and Mrs. G., respectively, both class 3 dangerous felonies. Defendant was found guilty as charged and was sentenced to the minimum term of seven years' imprisonment on Count I, and minimum terms of five years' imprisonment each on Counts II and III, with all terms to run concurrently. Defendant filed a timely notice of appeal.

## ISSUES

¶ 8 Defendant presents two issues:

1. Did the trial court err in giving the "Flight or Concealment" instruction?

2. Did the trial court err in refusing to give a lesser-included disorderly conduct instruction on Counts II and III?

## ANALYSIS

### Flight or Concealment Instruction

■ ¶ 9 RAJI Standard Criminal No. 9, entitled "Flight or Concealment," reads as follows:

In determining whether the State has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's running away, hiding, or concealing evidence, together with all the other evidence in the case. You may also consider the defendant's reasons for running away, hiding or concealing evidence. Running away, hiding or

concealing evidence after a crime has been committed does not by itself prove guilt. This instruction covers three different but related concepts: flight, concealment of self, and concealment of evidence. Each of these acts when committed by a criminal suspect has been adjudged to manifest a suspect's consciousness of guilt, which in turn "gives rise to an inference of actual guilt." *State v. Hunter,* 136 Ariz. 45, 48, 664 P.2d 195, 198 (1983) (flight and concealment of self); *see also State v. Bible,* 175 Ariz. 549, 592, 858 P.2d 1152, 1195 (1993) (flight); *State v. Salazar,* 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992) (flight and concealment of evidence).

¶ 10 At trial, the state requested the instruction be given and defendant's counsel objected, arguing that the evidence was insufficient to support any inference of flight. The trial court initially agreed that it would not give the flight portion but would instruct on "hiding" and "concealing evidence." Notwithstanding this ruling, the trial court gave the jury the full text of RAJI Standard Criminal No. 9.

¶ 11 On appeal, defendant does not argue that there was no support for the concealment of evidence portion of the instruction, implicitly conceding that the circumstances surrounding the finding of the gun and holster justify instructing on that principle. Defendant instead focuses on the flight, or "running away," aspect of the instruction, arguing that because there was no evidence of how he left the scene, that part of the instruction was not warranted. The state argues that Officer Heaslip's account of his following of defendant on Southern Avenue provides sufficient support for the jury to draw an inference of flight.[1]

■ ¶ 12 Instructing on flight is proper when the defendant's conduct manifests a consciousness of guilt. *See State v. Lujan,* 124 Ariz. 365, 371, 604 P.2d 629, 635 (1979) (running from the scene of a crime); *State v. Salazar,* 112 Ariz. 355, 357, 541 P.2d 1157,

1159 (1975) (attempting to elude police in a high speed chase); *State v. Guerrero,* 58 Ariz. 421, 425, 120 P.2d 798, 800 (1942) (escape following arrest). Whether the trial court should instruct on flight is determined by the facts in the particular case. What the court must determine is whether there is evidence from which it can be reasonably inferred that the defendant engaged in some "eluding" conduct that either was an attempt to prevent apprehension, or was an attempt to postpone apprehension in order to dispose of or conceal evidence that could tie him to the crime. *Cf. Salazar,* 173 Ariz. at 409, 844 P.2d at 576. Time, distance, and speed are relevant but not conclusive. The key inquiry is whether the defendant engaged in some type of eluding behavior designed to camouflage his participation in a crime, thus manifesting a consciousness of guilt.

¶ 13 In this case, we agree with defendant that merely leaving the G. residence would not justify the flight instruction. *See State v. Wilson,* 185 Ariz. 254, 257, 914 P.2d 1346, 1349 (App.1995). This determination does not help defendant, however, because the dispositive question is whether defendant's manner of driving while Officer Heaslip followed him was sufficient to support an inference of a consciousness of guilt. We conclude that it does.

■ ¶ 14 If defendant's driving were viewed in isolation, apart from the disposal of the gun and holster, defendant's position would be much stronger. Behavior that consists of driving slowly for a short distance before pulling over for a police vehicle displaying emergency lights, but no siren, may be too equivocal to support an inference of a consciousness of guilt. Here, however, defendant used this driving to "buy time" to also attempt to conceal evidence. Because the officer was behind defendant when defendant swerved off the road at a point where the gun and holster were later found, it is

---

1. Neither party mentions the "hiding" portion of the instruction nor describes any evidence tending to show that defendant attempted to conceal himself. Although ordinarily instructing on a legal principle for which there is no evidentiary support is error because it "invites the jury to speculate," *Spur Feeding Co. v. Fernandez,* 106

Ariz. 143, 148, 472 P.2d 12, 17 (1970), our supreme court has taken a different approach when the flight instruction is involved. In *Hunter,* 136 Ariz. at 49, 664 P.2d at 199, the court approved giving the full instruction, which then included only "running away" and "hiding," even when evidence of only one of the factors is present.

reasonable to infer that defendant became aware of the officer's presence but continued to drive so that he could dispose of this incriminating evidence. Driving for this purpose, no matter how brief the time or distance, qualifies as an attempt to elude, and it is this type of eluding behavior that is at the heart of the notion that flight manifests guilt. We therefore find no error by the trial court in giving the flight portion of the instruction.

### Disorderly Conduct Instruction

¶ 15 Defendant offered the following jury instruction, derived from Arizona Revised Statutes Annotated ("A.R.S.") section 13–2904(A)(6) (Supp.1998), and assigns error to the trial court's refusal to give it:

> A person commits disorderly conduct if:
>
> 1. With intent to disturb the peace or quiet of a neighborhood, family, or person, or with knowledge of doing so he
>
> 2. Recklessly handles, displays or discharges a deadly weapon.

Specifically, defendant argues that the trial court was compelled to give this instruction because the evidence supported it and *State v. Angle*, 149 Ariz. 478, 720 P.2d 79 (1986), required it.

¶ 16 In *Angle*, our supreme court adopted the dissenting position of Judge Kleinschmidt in this court's decision in *State v. Angle*, 149 Ariz. 499, 720 P.2d 100 (App.1985). In doing so, the court approved the proposition that disorderly conduct committed by reckless handling, displaying, or discharging of a firearm could be a lesser-included offense of the type of aggravated assault in which the defendant uses a firearm to intentionally place another person in reasonable apprehension of imminent physical injury. *See* A.R.S. §§ 13–1203(A)(2) and 13–1204(A)(2).

¶ 17 In his dissent, Judge Kleinschmidt acknowledged the general rule that "[a] requested instruction on a lesser included offense is proper only if the lesser offense is composed of some but not all of the elements of the greater crime so that it is impossible to commit the greater, without committing the lesser offense, and if the evidence supports an instruction on the lesser offense." *Angle*, 149 Ariz. at 507, 720 P.2d at 108.

Applying the elements test, Judge Kleinschmidt reasoned that intending to place another in reasonable apprehension of immediate physical injury using a firearm necessarily included the lesser culpable mental state of "recklessness," citing A.R.S. section 13–202(C), as well as the lesser result of disturbing another person's peace or quiet with a firearm. *Id.*

¶ 18 Defendant testified at trial that he did not shoot at L.C., Mr. or Mrs. G., or the house, but that he shot into the ground reflexively and out of panic. Defendant asserts that this testimony was sufficient for the jury to have found that he acted recklessly, rather than intentionally. Defendant further argues that because the shooting occurred immediately following his exit from the residence with Mr. and Mrs G. still inside, the jury could have found that he knew he would disturb their peace and quiet by the shooting. Defendant reasons that because these facts constitute disorderly conduct, he was entitled to an instruction thereon.

¶ 19 We do not address defendant's contention that this evidence supported an instruction of disorderly conduct because we believe that the case of *In re Maricopa County, Juvenile Action No. JV133051*, 184 Ariz. 473, 910 P.2d 18 (App.1995), undercuts the *Angle* conclusion that disorderly conduct satisfies the "elements" test to qualify as a lesser-included offense of aggravated assault. In *JV133051*, this court held that a conviction for disorderly conduct could not stand when the evidence did not show that the victim whose peace was alleged to have been disturbed was in fact "within the peace" when the disorderly act occurred. *Id.* at 475, 910 P.2d at 20. While acknowledging that the disorderly act might further provoke the victim, the court nevertheless held that unless the victim is "in repose of mind and peaceful intent" before commencement of the disorderly act, such an act cannot be said to disturb the victim's peace. *Id.* (quoting *City of St. Louis v. Sage*, 254 S.W.2d 252, 254 (Mo.App.1953)).

¶ 20 By interpreting disorderly conduct to include the requirement that the individual victim be in repose before the conduct occurs, *JV133051* reveals an element of the

crime of disorderly conduct that the dissent in *Angle* could not have considered in concluding that aggravated assault necessarily contains all the elements of disorderly conduct. To now prove that a person's conduct disturbed the peace of an individual, the prosecution must show the individual was in repose before the conduct commenced. However, to prove assault under section 13–1203(A)(2), the prosecution need not show the victim was in repose before the assaultive act. Put another way, while an assault victim may be in repose before the actual assault occurs, such repose is not required before the assault can be committed.

 ¶ 21 The elements test requires that commission of the greater offense always result in commission of the lesser offense. *State v. Cisneroz,* 190 Ariz. 315, 317, 947 P.2d 889, 891 (App.1997); *see also State v. Foster,* 191 Ariz. 355, 357, 955 P.2d 993, 995 (App.1998) (analyzing why disorderly conduct is not a lesser-included offense of assault under section 13–1203(A)(1)). Because one can commit an assault upon either a peaceful or a disturbed person, but one can disturb the peace only of the former, it can no longer be said that committing aggravated assault always results in commission of disorderly conduct. For that reason, disorderly conduct cannot be considered a lesser-included offense of aggravated assault under sections 13–1203(A)(2) and 13–1204(A)(2).

¶ 22 This case illustrates the distinction between aggravated assault and disorderly conduct. The assault here was committed upon individuals whose peace of mind was significantly disturbed well before the assaultive act occurred. Both Mr. and Mrs. G. participated in a heated argument with defendant inside the house. Mr. G. was angry enough to pursue defendant as he exited the house, shouting that defendant should return and finish the argument. When defendant thereafter fired his pistol, whether intentionally or recklessly, the undisputed evidence shows that Mr. and Mrs. G. were not "in repose of mind and peaceful intent." Thus, in firing the pistol, defendant did not disturb a pre-existing peaceful state of mind of the victims and therefore did not commit disorderly conduct. Consequently, it was not er-

ror for the trial court to refuse to instruct on that crime.

## CONCLUSION

¶ 23 We affirm defendant's convictions and sentences.

CONCURRING: SARAH D. GRANT, Judge.

THOMPSON, Judge, concurring.

¶ 24 I agree with the majority's holding that the jury was properly instructed regarding flight and that defendant was not entitled to an instruction on disorderly conduct. As to the latter holding, however, my analysis differs, and I therefore write separately.

¶ 25 In my view, this court's opinion in *JV133051* is incorrect and should not be followed. In that case we held that a disorderly conduct conviction could not stand where the victim was not in repose before the charged conduct occurred. The error lies, I conclude, in the assumption that disorderly conduct requires proof that any particular person was in fact disturbed by a defendant's conduct. The statute, A.R.S. § 13–2904(A), requires only that a defendant commit certain acts with the intent to disturb the peace or quiet of a person. It need not be proved that he actually disturbed somebody. *See State v. Johnson,* 112 Ariz. 383, 385, 542 P.2d 808, 810 (1975). *JV133051* is based on a flawed premise, and I would not decide this case on such a precedent.

¶ 26 Two other considerations, however, support the majority's holding.

¶ 27 First, the *mens rea* for disorderly conduct ("intent to disturb the peace or quiet of a neighborhood, family or person") is different than that for aggravated assault (intent to place "another person in reasonable apprehension of imminent physical injury").

A "disturbance of the peace" is a disturbance of public tranquility or order and may be created by any act which molests inhabitants in the enjoyment of peace and quiet or excites disquietude or fear. The offense embraces a great variety of conduct destroying or menacing public order and tranquility and includes not only vio-

lent acts but acts and words likely to produce violence in others.

*State ex rel. Williams v. Superior Court,* 20 Ariz.App. 282, 283, 512 P.2d 45, 46 (1973) (citations omitted). A charge of aggravated assault, conversely, does not require proof that a defendant intend to cause fear or other mental disquietude. *See* LaFave & Scott, *Substantive Criminal Law* § 7.16(b) at n. 26 (citing *Prosser & Keeton on Torts* § 10 (5th ed. 1984) ("Apprehension is not the same thing as fear"),[2] and *People v. Gardner,* 402 Mich. 460, 265 N.W.2d 1, 7 (1978) (victim need not be in fear to sustain assault charge)). Thus, aggravated assault could be committed by the display or handling of a gun by a person who neither intends nor causes the victim to suffer any disquietude at all. Because aggravated assault could be committed as charged in this case without the commission of disorderly conduct (which requires an intent to disquiet), disorderly conduct is not a lesser-included offense here, and the trial court did not err in refusing to instruct on it.

¶ 28 Second, as in *State v. Lara,* 183 Ariz. 233, 235, 902 P.2d 1337, 1339 (1995), the evidence in this case does not support the requested lesser-included instruction. Defendant fired his gun at close range through a door behind which he knew his victims were situated. It is not possible that the jury could have found that the victims were merely disturbed. *See id.* If the jury had believed that defendant shot merely reflexively, as he contended at trial, and not intentionally, the jury would not have found the requisite intent for aggravated assault and could not have found it for disorderly conduct.

---

**2.** Prosser & Keeton cite in turn to the *Restatement (Second) of Torts* § 24 cmt. b (1977), which distinguishes between "apprehension" and "fright" in assault cases:

It is not necessary that the other believe that the act done by the actor will be effective in inflicting the intended contact upon him. It is enough that he believes that the act is capable of immediately inflicting the contact upon him unless something further occurs. Therefore, the mere fact that he can easily prevent the threatened contact by self-defensive measures which he feels amply capable of taking does not prevent the actor's attempt to inflict the contact upon him from being an actionable assault.