98 P.3d 560

**STATE of Arizona, Appellee,**

v.

**Phillip Gregory SPEERS, Appellant.**

**No. 1 CA–CR 02–0578.**

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 28, 2004.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Katia Méhu, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

Richard C. Bock and Harley Kurlander, Tucson, Attorneys for Appellant.

## OPINION

IRVINE, Judge.

¶ 1 Phillip Gregory Speers ("Defendant") appeals from his convictions and the sentences imposed on two counts of sexual exploitation of a minor, each a class 2 felony and dangerous crime against children. We hold that the trial court erred by refusing to allow Defendant to present expert testimony on the subject of the proper protocols for interviewing young children to avoid suggestiveness and the implanting of false memories. The court also erred by giving a flight instruction. Because we are unable to find beyond a reasonable doubt that these errors did not have any effect on the verdicts, we vacate Defendant's convictions and remand for a new trial.[1]

---

1. Pursuant to Rule 111(h), Rules of the Arizona Supreme Court, we address and reject in a separate memorandum decision Defendant's claims that (1) there was insufficient evidence to support his convictions, (2) evidence obtained in the search of Defendant's parent's home and of two computers should have been suppressed, (3) other act evidence alleged to show his propensity to commit the charged offenses should not have been admitted, (4) the trial court improperly restricted cross-examination of a witness, and (5) two requested jury instructions pertaining to his theory of the case should have been given.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Defendant was a second-grade teacher at St. Francis School in Yuma during the 1999–2000 school year. On April 28, 2000, the school librarian was summoned to the school playground by Defendant. When she arrived at the playground, the librarian observed Defendant with his second-grade class. Defendant appeared upset and was crying. Defendant informed her that two of his female students were making accusations that could result in him going to jail.

¶ 3 After speaking with the two girls, the librarian took them to the office to see the principal. The principal called the police to report the allegations. An investigation by the Yuma Police Department ultimately resulted in a six-count indictment charging Defendant with five counts of child molestation and one count of sexual abuse involving five of his students. These charges are not a part of this appeal but it was during their investigation that this case surfaced.

¶ 4 While investigating the child molestation allegations, Detective Willits and Officer Wellard contacted Defendant at his Yuma apartment on the evening of April 28, 2000. Defendant accompanied the officers back to the police station for an interview. Following the interview, Defendant signed a written consent for a search of his apartment. During the search, Detective Willits accessed Defendant's computer and, after opening several folders, came across a file entitled "Today." When he opened this file, he found listings for three web sites of a sexual nature. Detective Willits seized Defendant's computer and subsequently obtained a search warrant for further examination of this computer.

¶ 5 On May 3, 2000, Defendant was arrested at his parents' home in Tucson on charges of child molestation and sexual abuse. The next day, the parents' residence was searched by Detective Segura and Sergeant Schmitt pursuant to a search warrant obtained by Detective Willits. Evidence seized from the parents' residence included a computer, composition notebooks, a backpack, Defendant's passport, and a printout of airline travel information from Expedia.com.

¶ 6 The computers seized from Defendant's Yuma apartment and his parents' Tucson home were transported to California for examination by Detective Sargent of the La Mesa Police Department. The forensic examination revealed a number of graphic image files depicting minors under the age of fifteen engaged in exploitive exhibition or other sexual conduct in the "temporary internet files" section on the hard drives of the computers. The logs for the graphic files found on the computer seized from Defendant's Yuma apartment listed access dates between April 14, 2000 and April 20, 2000.

¶ 7 Defendant was indicted in the present case on eighteen counts of sexual exploitation of a minor, each a class 2 felony and dangerous crime against children, based on graphic files found on the hard drive of the computer seized from his Yuma apartment (the "Yuma computer"). Sixteen of the images were from thumbnail pictures that would have appeared on the computer screen as parts of grids of images five pictures wide and four pictures high. Each of these small pictures constituted a separate file that was automatically stored on the Yuma computer as a temporary internet file. Two of the images were enlargements of thumbnails that had also been automatically stored as separate temporary internet files.

¶ 8 The State argued that the evidence showed defendant knowingly possessed the images because a user could not reach the webpage containing the thumbnails without consciously choosing to load it and that the enlargements would only be saved on the computer if the user affirmatively placed the cursor on the thumbnail and clicked to engage the links. Defendant countered that he could not be guilty of knowingly "possessing" the images because there was no evidence that he knowingly saved them on the computer, explaining that a temporary internet file is automatically saved by the computer, without any conscious action being required by the user. Defendant's expert also questioned the state's assertion that the enlarged images would only exist on the computer as a result of a deliberate clicking of the mouse on the thumbnail images.

¶ 9 At the conclusion of a twenty-one day jury trial, Defendant was found guilty on counts one and three, the enlarged images, and acquitted on the other sixteen counts. The jury further found that the children depicted in the two graphic images that were the subjects of counts one and three were under the age of fifteen. The trial court sentenced Defendant to consecutive seventeen-year prison terms.

¶ 10 Defendant filed a timely notice of appeal. We have jurisdiction pursuant to article VI, section 9 of the Arizona Constitution and Arizona Revised Statutes sections 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A) (2001).

## DISCUSSION

### A. It Was Error to Deny Defendant's Motion to Allow Expert Testimony Regarding Child Interviews.

¶ 11 Prior to trial, the State moved to consolidate the present case with the six-count indictment for molestation and sexual abuse in Yuma County Superior Court case number CR 2000–00472. As part of this motion, the State also requested a ruling from the trial court permitting it to introduce evidence pertaining to the child molestation case as propensity evidence under Rule 404(c) of the Rules of Evidence in this case. Among the evidence the State sought to introduce was testimony from four alleged child victims on the molestation and sexual abuse charges. Following a lengthy series of evidentiary hearings addressing these and other pretrial issues, the trial court denied the State's request to consolidate the two cases. The trial court further found, however, that a variety of evidence, including testimony from the victims regarding Defendant's alleged misconduct with them, would be admissible as propensity evidence pursuant to Rule 404(c) in regards to the sexual exploitation charges.

¶ 12 In order to rebut testimony from the alleged victims, Defendant moved for a ruling from the trial court allowing expert testimony from Dr. Ralph Underwager with respect to suggestive interview techniques and its influence on children's memories. The trial court denied Defendant's motion on the grounds that it is not accepted by the scientific community and the subject is within the common knowledge and understanding of the jury.

¶ 13 A decision by the trial court on the admissibility of expert testimony is generally reviewed for an abuse of discretion. *See State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). "However, when the admissibility of expert opinion evidence is a question of 'law or logic,' it is this court's responsibility to determine admissibility." *Id.*

¶ 14 The admissibility of expert testimony in cases involving sex crimes is subject to the same rules of evidence applicable to all expert testimony. *Id.* at 380, 728 P.2d at 250. Rule 702 of the Arizona Rules of Evidence, which governs the admissibility of expert opinion testimony, reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

To qualify for admission under this rule, opinion testimony on human behavior must (a) be relevant to an issue in the case; (b) aid in understanding evidence outside the experience or knowledge of the average juror; and (c) come from a qualified witness. *Logerquist v. McVey*, 196 Ariz. 470, 480, ¶ 30, 1 P.3d 113, 123 (2000).

¶ 15 Initially, we reject the State's arguments that the proposed expert testimony pertained to a collateral matter and that Dr. Underwager was not a qualified expert. The State's second contention is based on a comment by Defendant's counsel that he did not intend to call Dr. Underwager as a witness because he "came with some baggage." The record is clear, however, that this statement was made in connection with a discussion of whether Dr. Underwager would be called as a witness on the issue of sexual propensity and occurred long after the trial court's ruling precluding any expert testimony from him regarding the effect of improper investi-

gatory child interviews. Furthermore, the material provided to the trial court in support of the expert testimony by Dr. Underwager reflects that he possesses the necessary qualifications to testify as an expert on interview techniques and their impact on children. *See also United States v. Rouse,* 111 F.3d 561, 571–72 (8th Cir.1997) (approving admission of expert testimony by Dr. Underwager regarding suggestive interviewing techniques and their impact on children's memories).

■ ¶ 16 We also disagree with the State's claim that the trial court's ruling can be sustained because "the children's testimony was collateral to the prosecution at issue—possession of Internet child pornography." While the charges against Defendant in this case were limited to sexual exploitation of a minor, the propensity evidence offered by the State was no more collateral than other circumstantial evidence in any other case. Indeed, Rule 404(c) evidence is generally not direct evidence of guilt, but simply "provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged." Nevertheless, the law is clear that to the extent the evidence satisfies the requirements of Rule 404(c), it is admissible. If it is admissible, then the defendant has the right, as a matter of due process, to present relevant evidence challenging its validity and reliability. *See State v. Christensen,* 129 Ariz. 32, 36, 628 P.2d 580, 584 (1981) ("[I]t is inconsistent with fundamental justice to prevent a defendant from offering evidence to dispute the charge against him.").[2]

¶ 17 The State chose to offer the children's testimony for the purpose of establishing Defendant's guilt. As the State argues in its brief, the propensity evidence, including the children's testimony, "tended to negate a claim of unknowing possession, and therefore showed intent, knowledge, absence of mistake or accident." In closing argument, the State acknowledged that it had "pounded the theme throughout this case" that Defendant had "two faces," and was a child molester. The testimony of the children was directly

related to the State's theme and was not merely collateral to its case.

¶ 18 Turning to the reasons given by the trial court for not permitting Dr. Underwager to testify concerning the subject of child interviews, the finding that the proposed expert testimony is not accepted by the scientific community appears to be a reference to the *Frye* test. *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). Under *Frye,* the proponent of scientific evidence must establish the evidence's underlying reliability by showing that it has "gained general scientific acceptance and recognition." *State v. Richards,* 166 Ariz. 576, 577, 804 P.2d 109, 110 (App.1990). While Arizona continues to follow *Frye* for certain types of scientific evidence, not all expert testimony is subjected to a *Frye* analysis. *Logerquist,* 196 Ariz. at 485–91, ¶¶ 46–65, 1 P.3d at 128–34.

■ ¶ 19 Our supreme court has specifically held that the *Frye* test only applies to "opinion testimony based on novel scientific principles advanced by others." *Id.* at 480, ¶ 31, 1 P.3d at 123. *Frye* has no application "when a qualified witness offers relevant testimony or conclusions based on experience and observation about human behavior for the purpose of explaining that behavior." *Id.* at ¶ 30; *see also State v. Varela,* 178 Ariz. 319, 325–26, 873 P.2d 657, 663–64 (App.1993) (holding no *Frye* requirement for admission of expert testimony regarding Child Sexual Abuse Accommodations Syndrome). The latter is precisely the type of expert testimony Defendant intended to have Dr. Underwager present. Thus, the trial court's conclusion that his proposed testimony is not accepted by the scientific community does not provide a valid basis for excluding it.

■ ¶ 20 We also disagree with the trial court's second basis for not admitting Dr. Underwager's testimony—that the subject is within the common knowledge and understanding of the jury. Expert testimony is admissible "where it may assist the jury in deciding a contested issue, including issues pertaining to accuracy or credibility of a witness' recollection or testimony." *State v.*

---

**2.** *See also* Rule 404(c), which specifies that if character evidence is admitted, "evidence to re-

but the proof of other crimes, wrongs, acts, or an inference therefrom, may also be admitted."

*Lindsey,* 149 Ariz. 472, 473, 720 P.2d 73, 74 (1986).

¶ 21 Although there are decisions to the contrary in some jurisdictions, most courts that have considered the issue hold that expert testimony regarding the methods for interviewing young children or evaluating the interview techniques used in a particular case is properly admissible. *See* Brent G. Filbert, Annotation, *Admissibility of Expert Testimony as to Proper Techniques for Interviewing Children or Evaluating Techniques Employed in Particular Case,* 87 A.L.R. 5th 693, 693 (2001). "The basis for the majority rule is that the propriety and effect of interviewing techniques in child sexual abuse cases 'is a subject with which a lay juror may be unfamiliar.' " *Barlow v. State,* 270 Ga. 54, 507 S.E.2d 416, 417 (1998) (quoting *State v. Kirschbaum,* 195 Wis.2d 11, 535 N.W.2d 462, 467 (App.1995)).

¶ 22 As the New Jersey Supreme Court acknowledged in *State v. Michaels,* 136 N.J. 299, 642 A.2d 1372, 1379 (1994), based on an in-depth review of the literature in this area,

> a sufficient consensus exists within the academic, professional, and law enforcement communities, confirmed in varying degrees by courts, to warrant the conclusion that the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony concerning such events.

*See also Washington v. Schriver,* 255 F.3d 45, 57 (2d Cir.2001) (noting the emerging consensus in the case law that such expert testimony is admissible) and cases cited therein.

¶ 23 The State counters that the offered "expert testimony would have been a comment on the credibility, veracity, or competence of the witnesses with regard to the particular facts of the case, and would have invaded the province of the jury," and that cross-examination of the interviewers, which was done in this case, is sufficient. We disagree. The purpose of expert testimony concerning interview techniques is not to show that the child witness is not telling the truth, but to question whether the facts believed to be true by the witness are reliable. As explained by the Georgia Supreme Court, simple cross-examination may not be sufficient when the witness believes what she says and the interviewer believes the information was fairly obtained.

> "[C]ross examination of a child witness could be ineffectual if the child sincerely takes his or her recollections to be grounded in facts and does not remember the improper interview procedures which may have suggested them." *State v. Kirschbaum,* [535 N.W.2d] at 467.

Similarly, cross-examination of the interviewer is not necessarily sufficient.

> Child sexual abuse cases are a special lot. A major distinguishing aspect of a child sexual abuse case is how the victim came to relate the facts which led to the bringing of criminal charges. A defendant not only should be able to cross-examine prosecution witnesses regarding how they obtained their information, but also should have the chance to present expert testimony as to how such information is ideally obtained. Prosecutors are free to cross-examine, or to question the idea that there is only one blanket method of interviewing that should be applied to every child. *State v. Gersin,* [76 Ohio St.3d 491, 668 N.E.2d 486, 488 (Ohio 1996) ].

Of course, an expert witness for the defense cannot give an opinion that the victim made false allegations of molestation, because such testimony directly addresses the credibility of the victim. *Campbell v. State,* [221 Ga.App. 135, 470 S.E.2d 524, 526 (Ga.App.1996).] However, the fact that limited expert testimony regarding proper interview techniques indirectly involves the child's credibility does not render it inadmissible.

*Barlow,* 507 S.E.2d at 418.

¶ 24 Our supreme court has observed that most jurors are likely to be unfamiliar with the behavioral sciences. *Lindsey,* 149 Ariz. at 474, 720 P.2d at 75. Consequently, they do not necessarily possess the experience to determine what constitutes proper question-

ing of child witnesses or the knowledge of the possible effect of suggestive questioning on a young child's memory and its impact on the reliability of any subsequent testimony. Testimony intended to demonstrate that an interview of a child victim was suggestive or otherwise inappropriate and the risks created by such questioning "represents evidence only an expert could give on matters not within the knowledge of a juror ... [and] would assist the jury directly in evaluating the weight given to the testimony." *State v. Sloan*, 912 S.W.2d 592, 597 (Mo.App.1995).

¶ 25 Because Dr. Underwager's proposed expert testimony is not the type subject to a reliability inquiry under *Frye* and "involves an area of expertise beyond the ken of the average layman," *Barlow*, 507 S.E.2d at 417, we conclude that the trial court erred in refusing to permit Defendant to present it for the jury's consideration in evaluating the children's testimony.[3]

### B. It Was Error to Give a Flight Instruction.

¶ 26 The trial court, over Defendant's objection, gave the following "flight" instruction:

In determining whether the State has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's running away, hiding, or concealing evidence, together with all the other evidence in the case. Running away, hiding, or concealing evidence after a crime has been committed does not by itself prove guilt.

Defendant argues that the trial court erred in giving this instruction because it was not warranted by the evidence. Defendant additionally contends that the trial court erred in denying his motion to exclude the evidence on which the trial court based the giving of the flight instruction.

¶ 27 A trial court commits reversible error when it instructs on an issue

or theory that is not supported by evidence because it "invites the jury to speculate as to possible non-existent circumstances." *Herman v. Sedor*, 168 Ariz. 156, 158, 812 P.2d 629, 631 (App.1991) (quoting *Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 148, 472 P.2d 12, 17 (1970)). Instructing the jury regarding evidence of flight is proper only when the defendant's conduct manifests a consciousness of guilt. *State v. Cutright*, 196 Ariz. 567, 570, ¶¶ 12–13, 2 P.3d 657, 660 (App. 1999). The decision whether such an instruction should be given "is determined by the facts in the particular case." *Id.* at ¶ 12.

¶ 28 Our supreme court has set forth a two-part test to be applied in determining whether a flight instruction is appropriate:

First, the evidence is viewed to ascertain whether it supports a reasonable inference that the flight or attempted flight was open, such as the result of an immediate pursuit. If this is not the case then the evidence must support the inference that the accused utilized the element of concealment or attempted concealment. *State v. Rodgers*, [103 Ariz. 393, 442 P.2d 840 (1968).] The absence of any evidence supporting either of these findings would mean that the giving of an instruction on flight would be prejudicial error.

*State v. Smith*, 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976). Stated another way, this test requires that the court "be able to reasonably infer from the evidence that the defendant left the scene in a manner which obviously invites suspicion or announces guilt." *State v. Weible*, 142 Ariz. 113, 116, 688 P.2d 1005, 1008 (1984). Thus, merely leaving the scene or engaging in travel is not sufficient to support the giving of a flight instruction. *See, e.g., Smith*, 113 Ariz. at 300, 552 P.2d at 1194 (error to give instruction based on defendant walking and driving away from scene); *State v. Bailey*, 107 Ariz. 451, 452, 489 P.2d 261, 262 (1971) (error to

---

3. Dr. Underwager's testimony at any new trial for Defendant is properly limited to explaining to the jury the dangers of contaminated memories and suggestive practices when interviewing children and discussion of the particular practices employed in the instant case. It must be con-

fined to providing the jury information "which it may use in weighing the evidence to determine accuracy or credibility of a witness" and may not include any opinion regarding the accuracy, reliability or credibility of any particular witness. *Lindsey*, 149 Ariz. at 474, 720 P.2d at 75.

give instruction based on defendant leaving jurisdiction by going to Texas); *State v. Castro*, 106 Ariz. 78, 78–79, 471 P.2d 274, 274–75 (1970) (error to give instruction where defendant merely walked away from scene of knifing); *State v. Wilson*, 185 Ariz. 254, 257, 914 P.2d 1346, 1349 (App.1996) (error to give instruction based on the defendant driving home from scene).

¶ 29 The State contends the flight instruction was justified based on the presence of Defendant's passport and a printout of the travel information from Expedia.com during the search of his parents' residence. The passport and printout were found inside a pocket of a backpack with other items belonging to Defendant. The printout contained information regarding a round trip between Phoenix and Lisbon, Portugal. The information detailed a flight from Phoenix to Lisbon on May 7, 2000, and a return flight to Phoenix on August 6, 2000, with stopovers in New York City in both directions to change planes, with a price of $964.38. The State asserts that the presence of the passport and this printout in Defendant's backpack can be viewed as evidence that Defendant was preparing to "flee" the country.

¶ 30 The State's argument as to the possible inference that can be drawn from this evidence is not unreasonable. Thus, given the very minimal standard that evidence must satisfy in order to be "relevant" and therefore admissible, we hold that there was no abuse of discretion by the trial court in denying Defendant's motion to preclude this "flight" evidence at trial. *See* Ariz. R. Evid. 401; *State v. Oliver*, 158 Ariz. 22, 28, 760 P.2d 1071, 1077 (1988) (observing "standard of relevance is not very high"). Nevertheless, we further conclude that merely because such an argument can be made by the State based on this evidence does not mean that a flight instruction by the court is appropriate. Flight instructions go beyond an argument by counsel, and "point out to jurors that they may consider the defendant's behavior ... as bearing on guilt or innocence." *Weible*, 142 Ariz. at 116, 688 P.2d at 1008. As discussed above, it is only when the evidence "obviously invites suspicion or announces guilt" that such an instruction should be given. *Id.*

¶ 31 The presence of the passport and the printout of the flight itinerary in Defendant's backpack at his parents' home in Tucson simply do not rise to the level of evidence that makes guilt or suspicion obvious under the facts of this case. There is nothing in the record evidencing that Defendant ever made reservations, let alone purchased tickets for the travel listed on the printout. Although Defendant may have thought about flight, his actions did not make him harder to find or camouflage his activities. In short, the record is devoid of evidence demonstrating the kind of "eluding" behavior necessary to justify a flight or concealment instruction. *Cutright*, 196 Ariz. at 570, ¶ 12, 2 P.3d at 660. *See State v. Salazar*, 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992) (running from scene and discarding shoes); *State v. Lujan*, 124 Ariz. 365, 371, 604 P.2d 629, 635 (1979) (running from the scene of a crime); *State v. Salazar*, 112 Ariz. 355, 357, 541 P.2d 1157, 1159 (1975) (attempting to elude police in a high speed chase); *State v. Ramirez*, 142 Ariz. 171, 176, 688 P.2d 1063, 1068 (App.1984) (taking the "back roads" to leave country and concealing identity by using victim's name). Because the evidence fails to satisfy either aspect of the test enunciated in *Smith* for such a flight instruction, the trial court erred in giving the instruction. *Wilson*, 185 Ariz. at 257, 914 P.2d at 1349.

**C. The Errors In Precluding Defendant's Proposed Expert Testimony and Giving a Flight Instruction Are Not Harmless.**

¶ 32 When an issue is raised and erroneously ruled on by the trial court, we are required to review for harmless error. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1199 (1993). "Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *Id.* Put another way, the proper inquiry is "whether the guilty verdict actually rendered ... was surely unattributable to the error." *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S.

275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).

¶ 33 In our separate memorandum decision we reject Defendant's claim that there was insufficient evidence to support his convictions. This does not mean, however, that we must find that any errors in the trial were harmless. We cannot lightly assume how a jury would weigh the evidence. This is particularly true when the decision hinges on weighing credibility of witnesses or measuring the impact of expert testimony. Our supreme court, in analyzing whether a jury might have made findings relating to the death penalty differently than did the sentencing judge, has declined to find harmless error in such circumstances.

> The State did not present any direct evidence during the sentencing hearing to prove that the expectation of pecuniary gain motivated Hoskins to take Crystel's life. The State relied primarily on two witnesses who testified at trial that Hoskins had told them he planned to car-jack someone someday. Based on these witnesses' trial testimony and on circumstantial evidence, the judge found beyond a reasonable doubt that Hoskins murdered Crystel Cabral with the expectation of pecuniary gain. We cannot say, beyond a reasonable doubt, that a jury hearing the same evidence as did the judge would have interpreted the circumstantial evidence or assessed the witnesses' credibility as did the judge.

> * * *

> The defense presented an expert who diagnosed Hoskins as having Bipolar II Disorder and testified that the disorder could have contributed to Hoskins' conduct. We also cannot say, beyond a reasonable doubt, that a jury hearing the same evidence as did the judge would have assessed the defense expert's testimony similarly and would have failed to find mental impairment, a statutory mitigating circumstance.

*State v. Hoskins,* 204 Ariz. 572, 574, ¶¶ 6–7, 65 P.3d 953, 955 (2003); *see also State v. Armstrong,* 208 Ariz. 360, 363, ¶ 9, 93 P.3d 1076, 1079 (2004); *State v. Rutledge,* 206

Ariz. 172, 175, ¶ 14, 76 P.3d 443, 446 (2003). We conclude that the same circumstances exist here.

¶ 34 Defendant did not dispute that the graphic files that were the subject of charges against him were present on the hard drive of his computer. The essence of his defense was that he did not knowingly possess them. The propensity evidence, the most compelling portion of which was the testimony of the four children, was relevant to the issue of Defendant's mental state. To the extent that the jurors concluded that Defendant had some propensity for this type of sexual material it would tend to make it more likely that he had engaged in knowing possession. There is no way to determine what role the preclusion of expert testimony pertinent to the children's testimony may have played in the two guilty verdicts. We cannot say beyond a reasonable doubt that the jury would have given the same weight to the children's testimony if the reliability of the testimony was called into question by expert testimony. Aside from the testimony of the children themselves there was little direct evidence of the molestations, *compare State v. Garcia,* 200 Ariz. 471, 478, ¶¶ 41–42, 28 P.3d 327, 334 (App.2001) (error in allowing evidence of uncharged acts held to be harmless when victim's testimony corroborated with physical proof), so the question becomes whether the verdict would have been the same without the direct evidence that Defendant was a child molester.

¶ 35 The State presented other propensity evidence, including evidence showing Defendant's use of erotic and pornographic pictures of young girls, but none would have had the same impact on the jury as the evidence related to the child molestation charges. The State also presented expert testimony concerning the use of the computer and how the eighteen charged images could only be present on the computer's hard drive if the user consciously accessed the websites on which they appeared. Defendant attempted to rebut this evidence by arguing that the State's data was incomplete and that a computer may be involuntarily "redirected" to a website without leaving evi-

dence of the redirection. There was plainly conflicting testimony for the jury to weigh.

¶ 36 The jury acquitted Defendant on the sixteen counts related to the thumbnail pictures, but convicted him for the two enlarged images. As noted above, the State's theme throughout the trial was that Defendant wore a mask and behind his mask he was a child molester whose obsession with child pornography was inextricably tied to his molesting behavior. One of the State's final statements in closing arguments was that the jury should "go into the jury room, look at the images, weigh the evidence, and come back out here, pull this mask off of his face so that never again will a parent trust their daughter to his care." Given that the evidence that Defendant was a child molester was a central and compelling part of the State's case, we cannot say beyond a reasonable doubt that a jury hearing the evidence without properly evaluating the children's testimony would have reached the same verdict.

¶ 37 With regard to the flight instruction, erroneously giving the instruction has been held to be prejudicial error. *Bailey,* 107 Ariz. at 452, 489 P.2d at 262; *Castro,* 106 Ariz. at 79, 471 P.2d at 275; *Wilson,* 185 Ariz. at 257, 914 P.2d at 1349. The instruction may affect the verdict because it invites the jury to find a consciousness of guilt on a defendant's part based on very weak evidence. After reviewing the record and testimony at trial, we believe that the error in giving the flight instruction, standing alone, would be harmless. Because we find the error involving the preclusion of expert testimony requires reversal, we need not address the issue in any more detail.

¶ 38 Under these circumstances, we are unable to conclude beyond a reasonable doubt that the error in excluding the defendant's expert witnesses did not contribute to or affect the jury's verdicts. Defendant's convictions must therefore be reversed.

## CONCLUSION

¶ 39 The trial court erred in refusing to admit Defendant's proposed expert testimo-

ny and by giving a flight instruction. Accordingly, we vacate Defendant's convictions and sentences and remand this matter to the trial court for further proceedings consistent with this decision.

CONCURRING: JAMES B. SULT, Judge.

BARKER, Judge, dissenting.

¶ 40 I do not find error on either the preclusion of the proposed expert's testimony or the giving of the flight instruction. Accordingly, I respectfully dissent.

### I.

¶ 41 The elements of the offense in this case did not involve sexual abuse but instead involved the knowing possession of sexually explicit images of children. A.R.S. § 13–3553(A) (2001). As the state phrased it, this was an internet child pornography case, not a child sexual abuse case.

¶ 42 The children who testified at trial were molested by defendant.[4] Their testimony was not relevant to any issue of actual sexual abuse (as no such issue was present), but as to whether defendant had a sexually aberrant propensity. Ariz. R. Evid. 404(C). This propensity was in turn relevant to whether defendant's alleged propensity tended to make it more or less likely that he "knowingly" possessed the sexually explicit materials.

¶ 43 Defendant's proposed expert would have offered testimony that the *interview techniques* utilized with the children (when the children gave pre-trial statements) were suggestive. The desired result from this testimony could only be to impeach the credibility of the children as to the *live testimony* they rendered in open court. The children and their interviewers were available for full cross-examination as to the interview techniques employed.

¶ 44 The state asserts, and I agree, that the exclusion of the proffered expert testimo-

---

4. Defendant was convicted on these counts of sexual molestation in a separate trial. *State v. Speers,* Yuma County Super. Ct., No. CR 2000-

00472. That case is currently pending appeal in this court. *State v. Speers,* No. CA–CR 03–0812 (Ariz.App. filed Sept. 29, 2003).

ny as to allegedly improper interview techniques was proper as it was collateral testimony that was within the discretion of the trial court to exclude. "Evidence is collateral if it could not properly be offered for any purpose independent of the contradiction." *State v. Hill*, 174 Ariz. 313, 325, 848 P.2d 1375, 1387 (1993) (citing *State v. McGuire*, 113 Ariz. 372, 373, 555 P.2d 330, 331 (1976)). Here, the defense contends that the proposed testimony was intended to "explain," not impeach the children's testimony and that *reliability*, not *credibility* of the witnesses was at issue. While expert testimony that goes to behavioral characteristics of victims may be admissible in child sexual abuse cases, *State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986), none of our authorities extend this to child pornography cases. Likewise, the cases cited by the majority from other jurisdictions are all sexual abuse cases in which the expert testimony on interview techniques was allowed as it went to an *element* of the offense at issue. *Supra* ¶¶ 21–23.[5] None are based on child pornography cases in which any testimony as to interview techniques would *not* go to an element of the offense.

¶ 45 The proposed expert described his testimony as follows: "I am prepared to discuss the interviews of the children in this case and to explain the problems with them which may have contaminated the children's memories so that any subsequent statements may not be reliable or based upon the children's personal knowledge." Though the proposed expert went on to claim that "[m]y testimony will not comment on the children's credibility," it is difficult to imagine how testimony that is intended to point out how a witness' testimony has "problems" and may be "contaminated" cannot be viewed by the trial judge as going to the credibility of that witness. On this record and because this is a child pornography case, not a sexual abuse case, it was within the discretion of the trial court to exclude proposed expert testimony as to interview techniques. The trial judge

could properly determine that the proposed expert testimony was more collateral and unnecessary than relevant and informative. Accordingly, I find no error on this ground.

## II.

¶ 46 The following evidence of flight was admitted at trial: Three days after defendant was interviewed regarding allegations of sexual misconduct he made inquiries regarding international travel. The departure date for the international travel was only six days later. When executing a search warrant for defendant's home, defendant's backpack was found with his passport and the Expedia.com travel inquiry, both contained in the side pouch of the backpack. The flight and fare information were for a trip from Phoenix, Arizona to Lisbon, Portugal with a return date three months later.

¶ 47 Evidence of flight may be admissible, and properly instructed upon, when it reveals consciousness of guilt on the part of the defendant. *State v. Salazar*, 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992); *State v. Smith*, 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976). In this case, the trial judge was permitted to consider that not many people carry a passport and flight itinerary for European travel in the side pocket of their backpacks (particularly on a day when they are scheduled to teach school). Coming immediately on the heels of the criminal investigation, this was evidence that went beyond that of mere travel; it "obviously invite[d] suspicion." *State v. Weible*, 142 Ariz. 113, 116, 688 P.2d 1005, 1008 (1984). I find no error in giving the flight instruction on this record.

## III.

¶ 48 For the reasons above, I find no error. Accordingly, I respectfully dissent.

**5.** The majority also cites Brent G. Filbert, Annotation, *Admissibility of Expert Testimony as to Proper Techniques for Interviewing Children or Evaluating Techniques Employed in Particular Case*, 87 A.L.R. 5th 693, 693 (2001) for the proposition that many courts approve of expert testimony regarding appropriate techniques for interviewing adolescents. However, all the cases cited in the annotation are cases of alleged sexual abuse in which an expert's testimony regarding a victim's interview would relate to the crime itself. *Id.* at 701–714.