NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MAURICE HARRIS, *Appellant*.

No. 1 CA-CR 17-0440
FILED 7-17-2018

Appeal from the Superior Court in Maricopa County
No. CR2016-131917-001
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section,
    Jameson Rammell, a Rule 38(d) student
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Edward F. McGee
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

---

J O H N S E N, Judge:

¶1        Maurice Harris appeals his aggravated assault conviction. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Harris's girlfriend stopped by Harris's work one day, and he gave her the only key to the apartment they had recently begun to share, saying he would be off work at 10 p.m.[1]  After doing some shopping with her uncle, the girlfriend returned to the apartment around 9:30 p.m. to find Harris waiting outside.  Harris had gotten off work early, and his girlfriend could see he had been drinking beer and was "irritated" at having to wait for her to get into the apartment.  Once they were inside, Harris suddenly punched her twice in her left eye.  The girlfriend immediately turned aside to "grab something and [Harris] was already gone."  Unsure whether Harris was still in the building and afraid for her safety, the girlfriend called 9-1-1.

¶3        Police arrived shortly thereafter and searched for Harris but could not find him in or near the apartment.  Officers photographed the girlfriend's injury, which she described as a "big goose egg over [her] eye," and an officer took her to the hospital.  Over the next few hours, the swelling around her eye increased.  A scan showed that her left eye socket was fractured.

¶4        Harris did not show up for work the next day, but officers interviewed him at his workplace a week later.  There, Harris admitted that he and his girlfriend had a "disagreement" one night a little over a week before.  He said he had left the apartment after the disagreement and had not seen her since.  Officers told him of the girlfriend's injury.  In response,

---

[1]        On review, we view the evidence and all inferences from it in the light most favorable to sustaining the jury's verdict.  *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

Harris said he knew nothing about the assault, and, according to an officer, he expressed no concern about her condition.

**¶5**         A grand jury indicted Harris on one charge of aggravated assault, a Class 4 felony domestic violence offense. Harris's girlfriend and several police officers and doctors testified during the resulting three-day trial. Over Harris's objection, the court gave the jury a flight instruction. *See* Rev. Ariz. Jury Instr. Stand. Crim. 9. The jury convicted Harris, and, after finding he had two historical prior felony convictions, the court sentenced him to 10 years' imprisonment.

**¶6**         Harris timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes sections 12-120.21(A)(1) (2018), 13-4031 (2018) and -4033(A)(1) (2018).[2]

## DISCUSSION

**¶7**         The only argument Harris raises on appeal is that the superior court erred by giving the flight instruction. We review the superior court's decision to give a jury instruction for abuse of discretion. *State v. Burbey*, 243 Ariz. 145, 146, ¶ 5 (2017).

**¶8**         The flight instruction the court gave stated:

> In determining whether the State has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's running away, hiding, or concealing evidence, together with all the other evidence in the case. You may also consider the defendant's reasons for running away, hiding, or concealing evidence. Running away, hiding, or concealing evidence after a crime has been committed does not by itself prove guilt.

**¶9**         A flight instruction is proper only when the "[d]efendant's manner of leaving the scene of the crime [reveals] a consciousness of guilt." *State v. Lujan*, 124 Ariz. 365, 371 (1979). More specifically, our supreme court has ruled the instruction may be given only when the evidence reasonably supports an inference that "the flight or attempted flight was open, such as the result of an immediate pursuit," or "that the accused utilized the element of concealment or attempted concealment." *State v.*

---

[2]         Absent material revision after the date of an alleged offense, we cite the current version of a rule or statute.

*Smith*, 113 Ariz. 298, 300 (1976); *see State v. Solis*, 236 Ariz. 285, 287, ¶ 7 (App. 2014). "[M]erely leaving the scene or engaging in travel is not sufficient to support the giving of a flight instruction." *State v. Speers*, 209 Ariz. 125, 132-33, ¶ 28 (App. 2004). Rather, the evidence must support an inference "that the defendant left the scene in a manner which obviously invites suspicion or announces guilt." *Id.* at 132 (quoting *State v. Weible*, 142 Ariz. 113, 116 (1984)).

¶10        The court erred in giving the jury the flight instruction. The only relevant evidence of Harris's conduct after the altercation was the girlfriend's testimony, but she did not testify when or how Harris left, other than to say that he was gone when she turned back to him immediately after he punched her. There was no evidence that Harris ran from the scene. *Cf. Lujan*, 124 Ariz. at 371 ("Running from the scene of a crime, rather than walking away, may provide evidence of a guilty conscience prerequisite to a flight instruction."). Nor was there any other evidence that invited suspicion about his departure. Responding officers searched the apartment and determined he was no longer present. But a defendant's departure from the scene, even immediately after the act at issue, does not by itself sufficiently support an inference of open flight. *See State v. Corona*, 188 Ariz. 85, 90 (App. 1997) (error to instruct on flight when the "only evidence regarding the defendant's exit was . . . testimony that . . . he got on his bicycle and left").

¶11        Nor is there sufficient evidence that Harris attempted to conceal himself. Although he did not report to work the next day, there is no evidence police were unable to reach Harris by phone or that they later unsuccessfully tried to find him at his apartment. A one-day departure from his normal routine, without more, does not give rise to an inference that Harris concealed himself in such a manner to invite suspicion or announce his guilt. *See State v. Tison*, 129 Ariz. 526, 540 (1981) (record "replete with evidence" of concealment when defendants changed vehicles twice and painted and "partially buried" one of the vehicles); *State v. Swinburne*, 116 Ariz. 403, 414 (1977) (defendant used false names, shaved beard and dyed hair); *State v. Ferrari*, 112 Ariz. 324, 333 (1975) (defendant left the state and, upon return, "registered at a motel under an assumed name and listing a false occupation"); *State v. Earby*, 136 Ariz. 246, 248 (App. 1983) (defendant left the state); *State v. Bailey*, 107 Ariz. 451, 451-52 (1971) (evidence insufficient to warrant a flight instruction when defendant testified that he left the state because he worked as a truck driver travelling from California to Texas). Nor does the fact that Harris left his home, without more, warrant a flight instruction. *Cf. State v. Parker*, 231 Ariz. 391, 403-04, ¶¶ 43-50 (2013) (flight instruction warranted when defendant left

home and, over the course of 18 days, went to Mexico and used a false name, then went to California and abandoned a car, then went to Nevada).

¶12        We review for harmless error an erroneous jury instruction to which the defendant objected at trial. *See Solis*, 236 Ariz. at 287-88, ¶¶ 9-12. In this determination, we may affirm a conviction only when the State "prove[s] beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).  In determining whether the State has met this standard, we consider both the evidence and the attorneys' statements to the jury. *Solis*, 236 Ariz. at 287-88, ¶¶ 13-14.

¶13        The record here supports beyond a reasonable doubt that the error was harmless.  The girlfriend testified she had recently moved in with Harris, they had a romantic relationship and he punched her twice in the face on June 27, 2016.  Her testimony about the assault was entirely consistent with that of the investigating officers who found her, evidence of her call to 9-1-1 and the testimony of the hospital staff who treated her.  The jury saw photographs of the girlfriend's injuries taken shortly after the assault and hours later at the hospital.

¶14        During closing argument, the prosecutor cited the flight instruction and told the jury that Harris "ran away" and "didn't stick around to help [the girlfriend] get medical treatment."  Harris's counsel then drew the jury's attention to the erroneous instruction, telling the jury that the State "would like you to believe just because he left, that he fled the scene. Just because he didn't show up to [his job] the very next day, he's guilty." In rebuttal, the prosecutor acknowledged that the flight instruction, by itself, would not prove guilt, but asked, "Would you just walk away from your house at 10:00 at night, not come back to your residence, . . . not report to work . . . ?"

¶15        The prosecutor's closing argument did not create a reasonable doubt that the jury convicted Harris because of the erroneous flight instruction. *See State v. Valverde*, 220 Ariz. 582, 586, ¶ 16 (2009) (statements regarding erroneous jury instruction not necessarily prejudicial).  Although Harris did not testify, an officer testified that when interviewed by police, Harris said he knew nothing about any assault.  He told officers that a few nights before, he had left the girlfriend behind in the apartment after he and she had had a disagreement.  He was not specific about the date of the disagreement.  The issue for the jury, therefore, was not why Harris left the apartment after the assault.  It was whether Harris was present in the apartment at the time of the assault.  He denied knowing anything about

the assault; by its verdict, the jury believed the girlfriend's account over the account Harris gave to officers. Once the jury rejected Harris's statement that he knew nothing about any assault, the flight instruction was immaterial.

**¶16** In any event, the challenged instruction specifically addressed evidence "of the defendant's running away, hiding, or concealing evidence." But, as stated, the State did not offer any evidence that Harris ran or hid or concealed evidence. Accordingly, if jurors considered the flight instruction at all, they would have concluded that the instruction did not apply. *See Solis*, 236 Ariz. at 288, ¶ 14 (error harmless in part because court instructed jury to disregard those instructions rendered inapplicable by the evidence); *State v. Armstrong*, 208 Ariz. 360, 363, ¶ 9 (2004) (error not harmless when a reasonable jury "could differently assess the evidence").

## CONCLUSION

**¶17** Although the superior court erred in giving a flight instruction, the error was harmless beyond a reasonable doubt. We therefore affirm Harris's conviction and the resulting sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA