NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CALEB CRAIG KENT BARTELS, *Appellant*.

No. 1 CA-CR 19-0338
FILED 5-7-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-001031-001
The Honorable Susanna C. Pineda, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1 Caleb Craig Kent Bartels ("Bartels") appeals his convictions and sentences following a trial in which the jury found him guilty of murder in the first degree, aggravated assault, and burglary in the first degree. Bartels argues the superior court erred in instructing the jury it could consider evidence of flight in reaching its verdict and in incorrectly calculating his presentence incarceration credit for the murder count. For the reasons that follow, we affirm Bartels' convictions and sentences, but modify his sentencing minute entry on the murder count to reflect the correct presentence incarceration credit.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In the early morning of January 14, 2017, victim R.Z. and Bartels' brother, T.B., socialized near a fire pit in the backyard of R.Z.'s residence. An individual, later identified as Bartels, suddenly entered the backyard with a rifle and told the men to get their hands up before firing several shots at R.Z. Stunned, T.B. grabbed the barrel of the rifle and wrestled the shooter to the ground. T.B. fled the backyard and called 9-1-1.

¶3 Upon arrival, first responders found R.Z. deceased in the backyard; he had been shot several times. Police officers collected several cartridge casings from the backyard. R.Z.'s car had been parked in the driveway, and officers found scratches on the car's surface and punctures in the tires. Responding officers did not see anyone suspicious in the neighborhood and did not immediately identify a suspect.

¶4 Approximately five hours after the shooting, an Arizona Highway Patrol trooper stopped Bartels' vehicle near the Arizona-Utah border for speeding. The trooper released Bartels with a warning. That night, a Utah Highway Patrol trooper stopped Bartels' vehicle for a broken headlight and suspected Bartels was impaired. A second trooper conducted a canine sniff search, and the canine alerted to the presence of narcotics in the vehicle. During a search of the vehicle, the troopers located

a loaded magazine for an AR-15 rifle in the trunk and an AR-15 rifle in the rear floorboard. The troopers conducted a record check on the rifle using the serial number. After finding no warrant for Bartels and no weapons restrictions, the troopers released him with a warning.

¶5            The following day, Tempe police interviewed T.B. and K.W., Bartels' and T.B.'s mother. Bartels lived in the casita at his family's home in Tucson; his car was missing, and K.W. had not seen or heard from Bartels since the night before the shooting. Bartels had also left his cell phone in his room. T.B. told police that the voice he heard in the backyard may have been that of his brother, Bartels. T.B. and K.W. told police they had noticed some behavioral changes in Bartels over the past few years and that he had experienced some mental health issues. Police also learned Bartels and R.Z. had previously been roommates. Shortly thereafter, police entered a "temporary arrest" warrant for Bartels in the National Crime Database to alert any police officer who came into contact with him to contact the Tempe Police Department.

¶6            On the morning of January 21, 2017, a California Highway Patrol officer ran the license plate on Bartels' car after finding it parked in a remote area on a highway shoulder in northeastern California. After learning of the warrant and that he "was associated with first-degree murder out of Arizona," officers arrested Bartels and contacted the Tempe Police Department.

¶7            Tempe police determined Bartels purchased a Bushmaster AR-15 rifle in December 2016, and they matched its serial number to the rifle found during the traffic stop in Utah. Sales receipts indicated Bartels purchased ammunition that not only could be used with that AR-15 but also matched the casings found in R.Z.'s backyard. Police could not locate Bartels' AR-15 rifle following his arrest.

¶8            Bartels proceeded to a trial by jury on four charges: Count 1, murder in the first degree; Count 2, aggravated assault; Count 3, burglary in the first degree; and Count 4, criminal damage. After a thirteen-day trial, the jury found Bartels guilty of Counts 1, 2, and 3, and not guilty of Count 4. The court sentenced Bartels to an imprisonment term of natural life without the possibility of release for Count 1, fifteen years for Count 2, and seven and one-half years for Count 3. The court ordered the sentences for Counts 2 and 3 would run concurrent to one another and consecutive to the sentence for Count 1. For Count 1, the court granted Bartels 845 days of presentencing incarceration credit.

**¶9**        Bartels timely appealed his convictions and sentences.[1]  We have jurisdiction pursuant to Article 2, Section 24, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**DISCUSSION**

I.    Jury Instruction

**¶10**        Bartels argues the superior court erred in giving a flight instruction over his objection because the instruction was not supported by the evidence.  We review the superior court's decision to give a jury instruction for abuse of discretion.  *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014); *see State v. Anderson*, 210 Ariz. 327, 343, ¶ 60 (2005).

**¶11**        Before the superior court may give a flight instruction, the State must present evidence of flight after a crime from which jurors may infer a defendant's "consciousness of guilt for the crime charged."  *State v. Parker*, 231 Ariz. 391, 403, ¶ 44 (2013) (quoting *State v. Edwards*, 136 Ariz. 177, 184 (1983)).  The State is not required to show that law enforcement officers pursued the defendant at the time, but "merely leaving the crime scene is not tantamount to flight."  *State v. Wilson*, 185 Ariz. 254, 257 (App. 1995).  Rather, a flight instruction is proper when the evidence of the defendant's behavior "obviously invites suspicion or announces guilt."  *State v. Speers*, 209 Ariz. 125, 133, ¶ 30 (App. 2004) (quoting *State v. Weible*, 142 Ariz. 113, 116 (1984)).

**¶12**        To determine whether the State has presented evidence to support a flight instruction, the superior court applies the two-part test outlined by the Arizona Supreme Court in *State v. Smith*. 113 Ariz. 298, 300 (1976).  "First, the evidence is viewed to ascertain whether it supports a reasonable inference that the flight or attempted flight was open, such as the result of an immediate pursuit."  *Id.*  If there is no open flight or

---

[1]        After filing a Notice of No Intent to File a Reply Brief, Bartels filed an untimely reply brief, raising an issue not addressed in the State's answering brief.  *See* Ariz. R. Crim. P. 31.10(c) ("If the appellant files a reply brief, it must be strictly confined to the rebuttal of points made in the appellee's answering brief."); Ariz. R. Crim. P. 31.13(a)(3) (requiring a reply brief to be filed "no later than 20 days after the answering brief is served").  New issues raised in a reply brief are waived; we do not consider the arguments in Bartels' reply brief.  *See State v. Lopez*, 223 Ariz. 238, 239-40, ¶¶ 3, 7 (App. 2009).

attempted flight, "the evidence must support the inference that the accused utilized the element of concealment or attempted concealment." *Id.* If there is no evidence to support either finding, the flight instruction is prejudicial error. *Id.*

¶13 At trial, the State presented evidence that Bartels traveled from the Phoenix area to the Arizona-Utah border, where an Arizona Highway Patrol trooper stopped him within hours of the shooting. Utah Highway Patrol troopers stopped Bartels approximately twelve hours later. A Utah Highway Patrol trooper testified at trial that Bartels did not provide a sensible explanation for his travel. California Highway Patrol officers apprehended Bartels within six days after the murder, and his vehicle contained road maps for three states and information for homeless shelters in San Francisco. He did not inform family or friends about his trip, did not take his cell phone with him, and did not contact his family throughout his travels. The record supports a reasonable inference that Bartels' drive to California constituted unplanned open flight.

¶14 The State also presented evidence suggesting that Bartels disposed of a weapon fitting the description of the murder weapon. Bartels purchased a Bushmaster AR-15 rifle in December 2016, as evidenced by a sales receipt. Utah Highway Patrol troopers testified they found a Bushmaster AR-15 rifle during their search of Bartels' vehicle and searched the weapon's serial number to confirm it was legally owned. But the California law enforcement officers did not recover the weapon when Bartels was apprehended a few days later, and the weapon was never located. Thus, the record supports an inference that Bartels concealed or discarded the suspected murder weapon.

¶15 Bartels contends the facts here are similar to those in *State v. Speers*, in which the court found that a flight instruction was improper when the defendant's actions "did not make him harder to find or camouflage his activities." 209 Ariz. at 133, ¶ 31. In *Speers*, the State presented evidence of the defendant's passport and a printout of a flight itinerary in his backpack at the home where he was arrested. *Id.* at 128, 133, ¶¶ 5, 29-31. The State argued the items could be considered evidence the defendant was planning to leave the country. *Id.* at 133, ¶ 29. On appeal, the court rejected the State's argument, finding no evidence that the defendant took any steps beyond researching the flight; that he "may have thought about flight" did not satisfy the test in *Smith*. *Speers*, 209 Ariz. at 133, ¶ 31. But the facts in this case are easily distinguished from *Speers*. Here, unlike in *Speers*, the State presented evidence of what could reasonably be construed as Bartels' actual

flight, actions rather than evidence of mere planning or preparation. Bartels' reliance on *Speers* is not persuasive.

**¶16**         We find no reversible error in the superior court's decision to give the jury the flight instruction.

II.     Presentence Incarceration Credit

**¶17**         Bartels argues the superior court miscalculated presentence incarceration credit in sentencing Bartels. The State agrees. Because Bartels raises this issue for the first time on appeal, we review for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005).

**¶18**         A defendant must be credited "[a]ll time actually spent in custody pursuant to an offense" through the time of sentencing. A.R.S. § 13-712(B). For the purposes of the statute, "'custody' begins when a defendant is booked into a detention facility." *See State v. Carnegie*, 174 Ariz. 452, 454 (App. 1993). The statute does not distinguish between time spent in out-of-state custody and time spent in an Arizona detention facility. *State v. Mahler*, 128 Ariz. 429, 430 (1981). Failure to grant a defendant all presentence incarceration credit in sentencing constitutes fundamental error and must be corrected. *State v. Cofield*, 210 Ariz. 84, 86, ¶ 10 (App. 2005).

**¶19**         California Highway Patrol officers arrested Bartels and took him into custody on January 21, 2017. He was extradited to custody in Arizona on February 16, 2017, where he remained in custody until his sentencing date, June 10, 2019. The superior court credited Bartels with 845 days presentence incarceration credit, reflecting the time he spent in custody in Arizona only.[2]

**¶20**         Bartels argues, and the State concedes, he is entitled to 870 days presentence incarceration credit to include his time in custody in California. We therefore modify Bartels' sentencing minute entry for Count 1 to reflect 870 days' presentence incarceration credit. *See* A.R.S. § 13-4037(A).

---

[2]     The 845 days calculation appears to include Bartels' sentencing date June 10, 2019, which should not be included as part of presentence incarceration credit. *See State v. Hamilton*, 153 Ariz. 244, 246 (App. 1987). This error does not affect our determination that Bartels is entitled to credit for all time spent in custody: January 21, 2017, through June 9, 2019, which amounts to 870 days.

6

## CONCLUSION

**¶21**        For the foregoing reasons, we affirm Bartels' convictions and sentences, except the presentence incarceration credit for Count 1, which is modified as previously stated.



AMY M. WOOD • Clerk of the Court
FILED:     AA