NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

v.

LEMUEL HAROLD PALMER, *Appellant*.

No. 1 CA-CR 18-0616
FILED 10-1-2020

Appeal from the Superior Court in Maricopa County
No. CR2016-006089-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge David D. Weinzweig joined. Judge James B. Morse Jr. dissented.

_____

**P E R K I N S**, Judge:

¶1            Lemuel H. Palmer appeals his convictions and sentences for fraud and theft. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2            We view the facts in the light most favorable to sustaining the jury verdicts and resolve all reasonable inferences against Palmer. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶3            Between January 2013 and September 2014, Palmer received medical care from the Department of Veteran's Affairs ("V.A.") at least 74 times. The V.A. provides reimbursement to eligible veterans for travel expenses from their place of departure to the V.A. Medical Center in Phoenix. To receive reimbursement, a veteran must provide their place of departure to the V.A. Travel Office each time they apply for reimbursement. The V.A. then uses Google Maps to measure the veteran's travel distance. Palmer provided the V.A. with multiple departure addresses, including two addresses in Parker, Arizona, and received $6,829.97 in mileage reimbursements.

¶4            Palmer was on probation during this time and had provided different addresses, in Phoenix and Tempe, to the Maricopa County Adult Probation Department ("Probation Department"). The Probation Department visited Palmer to verify the Phoenix addresses. Palmer never provided the Probation Department an address in Parker.

¶5            A V.A. criminal investigator ("Investigator") learned that Palmer did not own the residence at the first address in Parker, and a Google search revealed that the second address did not exist. The true owner of the first residence testified at trial that he did not know Palmer and never gave him permission to use the property in Parker. The Investigator did not visit either address.

¶6            The State charged Palmer with fraudulent schemes and artifices, a class 2 felony, and theft, a class 3 felony.

¶7            At the final pretrial conference, the superior court ruled that the State could impeach Palmer with his two prior felony convictions, but only if he testified. *See* Ariz. R. Evid. 609. Palmer did not testify. Prior to trial, the State said it intended to call Palmer's probation officer to testify about Palmer's residences during the relevant period. Palmer objected. The court overruled Palmer's objection, citing its earlier order that the State cannot introduce testimony that Palmer was on probation, and directing that the witness only testify he was an employee of Maricopa County.

¶8            Palmer represented himself at trial with advisory counsel. The probation officer testified without reference to Palmer's probation status. The State then called the Investigator. On cross-examination, Palmer asked the Investigator about communications between the Investigator and probation officer. The court immediately called a bench conference, warning Palmer that his "very broad question" could lead "into the probation issue." Palmer continued his cross-examination on other subjects. Palmer later asked the Investigator about his investigative report, which was marked as an exhibit but ultimately not offered into evidence. The report referenced an F.B.I. record that was neither attached nor disclosed to Palmer. The following exchange occurred:

> Palmer: In here — well, you stated that I had an extensive F.B.I. record. I don't recall ever having an extensive F.B.I. record. Could you please tell me what that is?
>
> Witness: Okay. So the F.B.I. maintains all information, called N.C.I.C., National Criminal Information Center, I want to say. Anyone's criminal information is stored there. So whether you were 17, lived in Oklahoma, then 18 you moved to Nebraska, every crime that you have ever committed is there. So for you, sir, your crimes that you committed in the United States Army is present. The crimes you committed locally here in Maricopa County are present. It also stated that you were on probation, and that is why I was able to find [the probation officer].
>
> Palmer: Objection, Your Honor.

¶9            The court allowed the testimony as a "sufficient answer," describing it as "an indirect response," although the State claims this is a

3

transcription error and should read: "This is in direct response to a question." The trial and sentencing transcripts support the State's assertion. But nothing in our record indicates the State sought to correct the record. *See* Ariz. R. Crim. P. 31.8(g)(2) (a dispute over the accuracy of the record "must be submitted to and settled by the superior court.")

¶10　　　Palmer did not move for a mistrial. The court did not offer a limiting instruction and Palmer did not request one. Before closing arguments, the court directed the State not to refer to the Investigator's testimony about Palmer's criminal history, acknowledging that the testimony was "certainly prejudicial" and "did not help Mr. Palmer's case." The State did not mention the Investigator's testimony in closing argument.

¶11　　　The jury convicted Palmer as charged. Palmer filed multiple post-judgment motions, including a motion for a new trial based on the Investigator's prejudicial testimony. The superior court later denied the new trial motion, telling Palmer that the Investigator "responded directly to your question. . . . It's what we call opening the door and you asked him a question and he answered it." The court sentenced Palmer to concurrent terms of 15.75 years imprisonment for fraud and 11.25 years for theft. Palmer timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

¶12　　　The only issue on appeal is whether the superior court abused its discretion by denying Palmer's motion for a new trial. *See State v. Parker*, 231 Ariz. 391, 408, ¶ 74 (2013) (reviewing denial of a motion for new trial for abuse of discretion). Palmer argues the court should have granted a new trial because of the Investigator's testimony about Palmer's probation and criminal history. *See* Ariz. R. Crim. P. 24.1 (grounds for a new trial); Ariz. R. Evid. 404(b) (prohibiting the introduction of other bad acts into evidence absent a specific exception); *see also State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003) (describing requirements for mistrial based on improper witness testimony). The State counters that Palmer invited the error.

¶13　　　The invited-error doctrine directs that appellate courts "will not find reversible error when the party complaining of it invited the error." *State v. Logan*, 200 Ariz. 564, 565–66, ¶ 9 (2001) (collecting cases). The doctrine is intended to "prevent a party from 'inject[ing] error in the record and then profit[ing] from it on appeal.'" *Id.* at 566, ¶ 11 (alterations in original) (quoting *State v. Tassler*, 159 Ariz. 183, 185 (App. 1988)). A party

"invites prejudicial testimony by being the first party to elicit the testimony." *State v. Lucero*, 223 Ariz. 129, 136, ¶ 20 (App. 2009). If "otherwise inadmissible testimony was given and was called for by the question of defense counsel, it would not be considered as reversible error even if prejudicial." *State v. Gallegos*, 99 Ariz. 168, 172 (1965). In determining the doctrine's scope, the witness's "response must be 'pertinent,'" meaning "it must be specifically responsive to the invitation." *State v. Wilson*, 185 Ariz. 254, 259 (App. 1996).

¶14        We find no abuse of discretion on this record. Earlier in his cross-examination of the Investigator, the court warned Palmer that his "very broad questions" might lead "into the probation issue." Palmer initially listened to the court's advice but then returned to his broad questions—stating that he "[did not] recall ever having an extensive F.B.I. record" and asking the Investigator to "please tell me what that is?" Although Palmer did not intend to elicit the prejudicial testimony, the Investigator's answer was responsive to Palmer's broad question. *See State v. Stuard*, 176 Ariz. 589, 601 (1993) ("The broad question posed to [the witness] specifically called for the response now challenged."); *State v. Lawrence*, 123 Ariz. 301, 304–05 (1979) (holding that defense counsel's open-ended question on cross-examination had invited error); *Wilson*, 185 Ariz. at 259. That the Investigator provided a fulsome response does not render it non-responsive. As suggested by its name, the doctrine applies to *invited* responses, not merely to those responses *required* by whatever subjective intent existed in the mind of an inartful questioner. *See State v. Escalante*, 245 Ariz. 135, 145 ¶ 38 (2018) ("[I]f defense counsel invited trial error, *strategically or carelessly*, the defendant cannot obtain appellate relief . . . .") (emphasis added).

¶15        We recognize that Palmer was self-represented. But the court had informed Palmer before trial that he would be held to the same standards and rules of procedure as attorneys and even warned Palmer earlier in his cross-examination of the Investigator about asking broad questions. Palmer had ample warning that broad or open questions might lead him into dangerous territory. *See State v. Parker*, 22 Ariz. App. 111, 114–15 (1974) ("The defendant, even though representing himself, cannot complain of matters that crept into the case through his own misconduct."). The superior court did not abuse its discretion by denying Palmer's request for a new trial.

## CONCLUSION

¶16        We affirm.

**M O R S E**, Judge, dissenting:

**¶17**         I respectfully dissent. The majority acknowledges, *supra* ¶ 13, that invited error only applies when the answer is "specifically responsive to the invitation." *Wilson*, 185 Ariz. at 259. The majority further agrees, *supra* ¶ 14, that when Palmer asked about the undisclosed F.B.I. record, he did not intend to solicit a recitation of his criminal history. Our disagreement is over whether the Investigator's answer was specifically responsive to Palmer's question.

**¶18**         Palmer asked the Investigator the following: "In here — well, you stated that I had an extensive F.B.I. record. I don't recall ever having an extensive F.B.I. record. Could you please tell me what that is?" The most natural reading of Palmer's question is to "please tell me what [an extensive F.B.I. record] is?" And the beginning of the Investigator's answer was responsive to that question: "Okay. So the F.B.I. maintains all information, called N.C.I.C., National Criminal Information Center, I want to say. Anyone's criminal information is stored there."

**¶19**         But the Investigator did not stop there. He continued and referenced (i) crimes committed in Oklahoma and Nebraska when Palmer was 17 and 18, (ii) crimes Palmer committed in the Army, (iii) crimes Palmer committed in Maricopa County, and (iv) Palmer's status as a probationer. *Supra* ¶ 8. The court overruled Palmer's objection to the answer. Later, a juror asked the Investigator "[h]ow was contact made or attempted to be made with Mr. Palmer?" The Investigator answered that he attempted telephone contact "when Mr. Palmer was a fugitive, no longer reporting to probation, and a warrant was issued for his arrest." The court overruled Palmer's foundation objection to that answer.

**¶20**         Neither the latter part of the Investigator's answer nor the answer to the juror question was "clearly responsive to the question asked" by Palmer. *State v. Maggard*, 104 Ariz. 462, 465 (1969). Although somewhat open ended, his question did not invite or require reference to Palmer's out-of-state convictions, military convictions, local convictions, and Palmer's status as a fugitive and probationer. Because the answer must be clearly responsive to invoke invited error, any carelessness by Palmer does not provide the Investigator "the excuse to answer any way he pleases." *Id.*; *see also Stuard*, 176 Ariz. at 601 (stating that "an experienced police officer should understand that such testimony is generally prohibited and, in any event, ought to be so admonished before testifying"); *State v. Brewer*, 110 Ariz. 12, 15 (1973) (noting that police officers are "in a position to know of

the damaging effect of the volunteered testimony"). Moreover, Palmer objected to the Investigator's answer. *See State v. Saenz*, 98 Ariz. 181, 185 (1965) (finding no invited error when counsel objected to officer's answer). Under these circumstances, we should not apply the invited-error doctrine.

**¶21** Further, despite noting that the Investigator's response was "indirect" and "certainly prejudicial" to Palmer's case, the trial court did not give a curative instruction and left the jury free to consider the testimony about Palmer's criminal history and status as a fugitive and probationer. *Contra Lamar*, 205 Ariz. at 439, ¶ 43 (finding that the court's curative instruction sufficiently cured any error). Nor was the evidence in this case overwhelming such that the remarks about Palmer's criminal history did not, beyond a reasonable doubt, contribute to the verdict. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005) ("Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence."). Accordingly, I would vacate Palmer's convictions and sentences and remand for a new trial.

