NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTOINE LEMAR JONES, *Appellant.*

No. 1 CA-CR 23-0389
FILED 06-13-2024

Appeal from the Superior Court in Maricopa County
No.  CR2020-001736-001
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

**B A I L E Y**, Judge:

¶1 Antoine Lemar Jones appeals his convictions and sentences for first-degree murder and armed robbery. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 We view the facts in the light most favorable to sustaining Jones' convictions. *State v. Thompson*, 252 Ariz. 279, 287 n.3 (2022).

¶3 One morning in December 2015, police found Henry[1] dead in a white SUV parked at an apartment complex. Henry had been shot through the SUV's driver's side window.

¶4 Earlier that morning, Henry picked up two prostitutes, Ava and Sandra, and drove them to the apartment complex. When Henry arrived, Ava's pimp, Jones, was standing outside the apartments with a group of people, including Travis and Ken.

¶5 Before Henry arrived, Jones told Ken he had been robbed and he needed to get his money back. Jones told Ken that if the person who had purportedly robbed him arrived while Ken was there, Ken should "[w]alk away and mind [his] business." When Henry arrived at the apartment complex in a white SUV, Jones said, "That's the dude right there," and told Ken to "get out [of] here and mind [your] business."

¶6 Henry parked at the apartment complex. Ava exited the SUV and told Jones that Henry did not want her. Jones thought Henry was being "disrespectful" and approached the SUV with two other men and Ava. Ava stood at the passenger side talking to Sandra, who was still in the SUV. Jones and the two men stood on the driver's side. Jones asked Henry, "Why don't you want to give the girls the money[?]" Then, Ava heard gunshots coming from the driver's side and saw Jones and the two men moving toward the apartment complex's entrance. Travis also heard gunshots and then saw Jones running from the driver's side of the SUV holding a handgun. Jones was the only person Travis saw with a gun that morning.

¶7 Penny watched the incident from her apartment. Penny saw two men and one woman fighting. One of the men had a gun. The man with the gun chased the other man to a vehicle. Penny heard gunshots and

---

[1] We use pseudonyms to protect the victim's and witnesses' privacy. *See State v. Maldonado*, 206 Ariz. 339, 341, ¶ 2 n.1 (App. 2003).

then saw the man with the gun and the woman run into an alleyway. Later, Penny watched the man and woman return to the vehicle, remove a bag, and then leave the apartment complex.

**¶8**     Surveillance footage showed Henry going through a drive-thru shortly before the incident. Henry pulled cash out of his right-front pocket, paid for his order, and put the remaining folded wad of bills back in his right-front pocket. When police found Henry, his wallet in his left-back pocket contained more than $1,000, but his right-front pocket contained only coins.

**¶9**     A grand jury indicted Jones for first-degree murder (count 1), armed robbery (count 2), and misconduct involving weapons (count 3). Count 3 was severed before trial.

**¶10**     In March 2023, the jury found Jones guilty of first-degree murder and armed robbery. The jury also found the State proved four aggravating factors for each count. The superior court sentenced Jones to natural life for count 1, and a concurrent, aggravated prison term of 35 years for count 2, with 1,328 days' credit for presentence incarceration.

**¶11**     We have jurisdiction over Jones' timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

I.     Rule 20 Motion

**¶12**     Jones argues insufficient evidence supports his convictions, and the superior court erred by denying his motion for a judgment of acquittal. The superior court must grant a motion for judgment of acquittal when "there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). We review a superior court's ruling on a motion for judgment of acquittal de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (citations omitted). "'Substantial evidence' . . . is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id.* (citations omitted). The evidence may be direct or circumstantial. *State v. Teagle*, 217 Ariz. 17, 27, ¶ 40 (App. 2007). Although the record may contain conflicting evidence, the jury must weigh the evidence and determine the witnesses' credibility.

*See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004). We do not reweigh the evidence. *See id.*

### A. Armed Robbery

**¶13** Jones argues insufficient evidence supports his armed robbery conviction because the State offered no evidence Henry had the money when he was shot, and Jones was not found with the money. "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13-1902(A). As applicable here, a person commits armed robbery if, "in the course of committing robbery," the person "[i]s armed with a deadly weapon" or "[u]ses or threatens to use a deadly weapon." A.R.S. § 13-1904(A)(1), (2). "In the course of committing" is defined as "any of the defendant's acts beginning with the initiation and extending through the flight from a robbery." A.R.S. § 13-1901(2). The definition of "[d]eadly weapon" includes a firearm. A.R.S. § 13-105(15).

**¶14** Shortly before he was shot, Henry had a "wad" of bills in his right-front pocket. But when the police discovered Henry's body, his right-front pocket contained only coins. This evidence supports the inference that Henry had money taken from his person or immediate presence during the incident.

**¶15** Jones told Ken that he had been robbed, pointed to a man matching Henry's description as the person who robbed him, and told Ken to "[w]alk away and mind [his] business." Jones was purportedly upset because Henry did not want to pay Ava, and Jones and Henry were arguing before Henry was shot. Further, Henry was shot through his driver's side window. Ava testified Jones was standing on the driver's side when Henry was shot, and Travis heard gunshots and then saw Jones running from the SUV's driver's side with a gun in his hand. Travis also testified Jones was the only person he saw with a gun that morning, and forensic evidence showed the shots fired were from a single gun. Based on this evidence, a rational trier of fact could have found the taking was against Henry's will, and Jones used force against Henry with the intent to coerce him to surrender the money.

**¶16** Jones argues the evidence suggests someone other than Jones took Henry's money. But Penny testified the shooter and victim were arguing outside the car before the shooting, and the shooter returned to the

victim's car after the shooting, took what looked like a bag, and then left the apartment complex. And the evidence supported the jury's finding that Jones used force against Henry. Based on this testimony, Jones' purported financial motive for approaching Henry, the argument before the shooting, and Henry's missing money, the jury could have found Jones took Henry's money before or shortly after shooting Henry. *See State v. Anderson*, 210 Ariz. 327, 342–43, ¶ 55, *supplemented by* 211 Ariz. 59 (2005) ("[A] robbery may [] be established when the use of force precedes the actual taking of property, so long as the use of force is accompanied with the intent to take another's property." (citation omitted)). Jones' argument that someone else took the money would require us to reweigh the evidence, which we will not do. *See Williams*, 209 Ariz. at 231, ¶ 6.

¶17 As we have recognized, a firearm is a deadly weapon. *See* A.R.S. § 13-105(15). And the evidence supports the finding that Jones approached Henry, the two argued, Jones shot Henry and ran away with a gun in his hand, and Jones took Henry's money. Based on this evidence showing the sequence of events, a rational trier of fact could have found Jones used a gun in committing the robbery and during his immediate flight. Thus, a rational trier of fact could have convicted Jones of armed robbery.

### B. First-Degree Murder

¶18 Jones also argues insufficient evidence supports his first-degree murder conviction because "[n]o evidence was ever offered that [Jones] was seen shooting the victim," "[n]o gun was recovered," and "[n]o fingerprints, DNA, or video evidence linked [Jones] as the shooter." A person commits felony murder when "[a]cting either alone or with one or more other persons the person commits or attempts to commit [armed robbery]" and, "in the course of and in furtherance of the [armed robbery] or immediate flight from the [armed robbery], the person or another person causes the death of any person." A.R.S. § 13-1105(A)(2). A rational trier of fact could have found Jones committed armed robbery, so the remaining issues are whether Jones caused Henry's death and whether causing Henry's death was in the course of and in furtherance of the armed robbery or during Jones' immediate flight.

¶19 Henry died from gunshot wounds, and forensic evidence showed the shots fired were from a single gun. After the shooting, Travis saw Jones running from the driver's side of the SUV with a gun in his hand, and Jones was the only person Travis saw with a gun that morning. Based

on this evidence, a rational trier of fact could have found Jones caused Henry's death.

**¶20**        Further, Jones purportedly had a financial motive for approaching Henry, the two argued, Henry was shot, and Jones fled the scene. And the evidence supports the inference that Jones took Henry's money. Based on this evidence, a rational trier of fact could have found that Jones caused Henry's death in the course of and in furtherance of the armed robbery, or during his immediate flight.

**¶21**        Felony murder and premeditated murder are alternative theories of first-degree murder. *See State v. Martinez*, 218 Ariz. 421, 427, ¶ 22 (2008). The State alleged both theories here, and the jury members could have convicted Jones on either theory. Because a rational trier of fact could have found Jones committed felony murder, we do not address the premeditated murder theory. *See id.*

II.     Request to Continue the Trial

**¶22**        Jones argues the superior court erred by denying his request to continue the trial. We review the denial of a motion to continue for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 555, ¶ 18 (2014). Mid-trial continuances should be granted "only under the most exigent circumstances." *State v. Eisenlord*, 137 Ariz. 385, 391 (App. 1983) (citation omitted).

**¶23**        Travis testified, was cross-examined by Jones' counsel, and then released by the court. After a recess, Jones' counsel asked that Travis remain under subpoena so he could call Travis back during Jones' case-in-chief. The superior court said Travis had been released from the State's subpoena, so Jones would have to subpoena him. Jones did not subpoena Travis, and his apparent attempts to secure Travis' voluntary reappearance failed. On the final day of testimony – two days after Travis testified and was released by the court – Jones asked for a continuance to secure Travis' reappearance. The superior court denied Jones' request.

**¶24**        It is generally not an abuse of discretion to deny a motion to continue when the party did not subpoena the witness or when the witness is sought for impeachment purposes. *See State v. Blodgette*, 121 Ariz. 392, 394-95 (1979) (failing to subpoena witness); *State v. Griffin*, 117 Ariz. 54, 56 (1977) (calling witness for impeachment purposes). Jones did not subpoena Travis, and Jones' counsel sought Travis' reappearance ostensibly because he forgot to cross-examine Travis about his conflicting pre-trial statements.

Thus, the superior court did not abuse its discretion by denying Jones' request for a continuance.

III.     Flight Instruction

**¶25**        Jones argues the superior court erred by giving the jury a flight instruction. We review the decision to give a flight instruction for an abuse of discretion. *State v. Parker*, 231 Ariz. 391, 403, ¶ 44 (2013).

**¶26**        The flight instruction stated:

> In determining whether the State has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's running away, hiding, or concealing evidence, together with all the other evidence in the case. Running away, hiding, or concealing evidence after a crime has been committed does not by itself prove guilt.

**¶27**        A court may give a flight instruction when there is "evidence from which jurors may infer 'consciousness of guilt for the crime charged.'" *Id.* (citation omitted). The evidence must support a reasonable inference that the defendant engaged in (1) open flight or attempted flight; or (2) concealment or attempted concealment. *State v. Smith*, 113 Ariz. 298, 300 (1976).

**¶28**        "Running from the scene of a crime, rather than walking away, may provide evidence of a guilty conscience prerequisite to a flight instruction." *State v. Lujan*, 124 Ariz. 365, 371 (1979) (citation omitted). Travis testified he heard gunshots and then saw Jones run from the driver's side of the SUV. Jones argues this was not evidence of flight because law enforcement was not at the scene or in pursuit. But law enforcement pursuit is not required to uphold a flight instruction. *Parker*, 231 Ariz. at 404, ¶ 48. Thus, Jones' open flight from the crime scene supported the flight instruction.

**¶29**        A flight instruction is also proper when "the defendant engaged in some 'eluding' conduct that either was an attempt to prevent apprehension, or was an attempt to postpone apprehension in order to dispose of or conceal evidence that could tie him to the crime." *State v. Cutright*, 196 Ariz. 567, 570, ¶ 12 (App. 1999) (citation omitted), *overruled in part by State v. Miranda*, 200 Ariz. 67, 68–69, ¶¶ 4–5 (2001). Travis testified that, after the shooting, Jones told a group of people gathered at a convenience store near the apartment complex "not to say nothing." This

supported a reasonable inference that Jones had concealed or tried to conceal evidence tying him to the crimes.

¶30          Jones argues he left the crime scene out of fear, and his statement after the shooting can be attributed to the high crime area, "where its citizens did not trust or want to speak with police." Alternative explanations create questions of fact for the jury to decide, but do not make a flight instruction improper. *See Parker*, 231 Ariz. at 404, ¶ 50. *See also State v. Hunter*, 136 Ariz. 45, 49 (1983) (holding an appellant's argument that "he ran from the scene out of fear, not out of consciousness of guilt" did not preclude the flight instruction). Thus, the superior court did not abuse its discretion by giving the flight instruction.

## CONCLUSION

¶31          We affirm Jones' convictions and sentences.

